IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| JONATHAN ZUHOVITZKY | ) | Civil Action No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, THE | ) | **COMPLAINT** |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY and THE UNITED STATES INTERNAL | ) | |
| REVENUE SERVICE, FHIRDOSA KHATIB, (in her | ) | |
| Capacity both as a Federal Employee and Individually) and | ) | |
| JENNIFER SAWYER, (in her capacity both as a Federal | ) | |
| Employee and Individually) | ) | |
| Defendants. | ) | |

_____

Melissa A. Perry (New York No. 53637673), Cohen, LaBarbera & Landrigan LLP, 99 Brookside

Avenue, Chester, New York, 10918 *t:* (845) 291-1900, *f: (845) 291-8609* for plaintiff.

Plaintiff JONATHAN ZUHOVITZKY, by and through his attorneys Cohen, LaBarbera &

Landrigan, LLP, makes his complaint and alleges as follows:

## JURISDICTION AND VENUE

*1.*  This is a civil action arising under certain provisions of federal law, including without

limitations 28 U.S.C.A. §1346(a)(2) (The "Little Tucker Act"),  28 U.S.C. §1355; 28

U.S.C.A. §2679,  and  because this action arises under the laws of the United States, this

Court has original subject matter jurisdiction under such provisions of law as includes

without limitation:  28 U.S.C. §1331 and supplemental jurisdiction over any and all state

law claims forming part of the same case and controversy under such provisions of law as includes without limitation 28 U.S.C. §1367.

2.  This Court has personal jurisdiction over all Defendants because all Defendants are agencies of the United States of America or employees of those agencies.

3.  Venue lies in the Southern District of New York pursuant to 28 U.S.C. §1391 because all Defendants are located in the Southern District of New York, a substantial part of the events or omissions giving rise to this action occurred in the Southern District of New York,

**Introduction**

4.  Plaintiff herein objects to the imposition of a willful civil penalty under the Report of Foreign Bank and Financial Accounts ("FBAR") administered by the United States Financial Crimes Enforcement Network ("FinCEN") and the United States Department of Treasury Internal Revenue Service. The Defendants have: violated Plaintiff's Due Process Rights under the Fifth Amendment of the United States Constitution, thereby enacting an illegal taking of Plaintiff's property;  sought to impose an excessive fine, thereby violating Plaintiff's rights under the Eighth Amendment of the United States Constitution for not including in his FBAR filings an account for which he held only signatory power over the financial accounts of a foreign citizen. The individual Defendants violated Plaintiff's Due Process Rights under the Fifth Amendment of the United States Constitution by their individual, intentional bad acts under the Biven's line of case law.

5.  The maximum penalty for willfully failing to file an is $100,000 or 50% of the value of the account, whichever is greater with each unfiled report begetting a separate penalty. 31

2

U.S.C. § 5321(a)(5) (C). Ultimately the fine for willfully failing to file the FBAR can far exceed the actual value of the unreported financial asset.

6.   In the case of a representative holding only signatory authority over an account, the government seeks to assess this exorbitant penalty even where it is conceded the representative holds no beneficial ownership rights to the account or its assets.

## THE PARTIES

*Plaintiff*

7.   Jonathan Zuhovitzky  (hereinafter "Zuhovitzky" or *"Plaintiff"* ) is a naturalized citizen of the United States of full age, currently residing in Berlin, Germany.

*Defendants*

8.    The U.S. Department of the Treasury is the administrative agency charged with administering the FBAR. *See* 26 U.S.C. §§ 1474(f), 5314(a).

9.    The Internal Revenue Service is an office of the Treasury Department and administers the FBAR. 26 U.S.C. § 7803(a)(1)(A); 31 C.F.R. § 103.56(g); *see also e.g.*, Reporting by Foreign Financial Institutions, 78 Fed. Reg.5874 (Jan. 28, 2013) (referring to joint rule-makings by IRS and Treasury Department regarding FATCA.

10.  Fhirdosa Khatib is an employee/agent of the Internal Revenue Service whose wrongful actions determined an unwarranted "willful" FBAR penalty against Plaintiff.

11.  Jennifer Sawyer is an employee/agent of the Internal Revenue Service whose wrongful actions reaffirmed an unwarranted "willful" FBAR penalty against Plaintiff.

## FACTUAL BACKGROUND

*Plaintiff's Personal History*

12. Plaintiff was born in Tel Aviv, Israel in 1945.

13. Plaintiff is a dual citizen of the United States and Israel.

14. Plaintiff is a naturalized citizen of the United States, having become a citizen in 1999.

15. By profession, Plaintiff is a financial and investment adviser.

16. During the years that Plaintiff worked and resided within the United States, he lived within the borough of Manhattan, in New York City.

17. Since October 2010, Plaintiff has resided in Berlin, Germany

18. Plaintiff and his wife were married on March 27, 1969 in Israel and remain married to this time.

19. Plaintiff's wife, Esther Zuhovitzky, (hereinafter "Esther" or "Plaintiff's wife") is a citizen of Austria and Israel.

20. Plaintiff's wife has never been a U.S. citizen or resident, a fact conceded by the Department of Treasury.

21. Plaintiff's wife was raised in Tokyo, Japan and Zurich, Switzerland.

### The Plaintiff's Wife's UBS Account

22. During the 1960's, while residing in Switzerland, Plaintiff's wife opened a bank account at the Union Bank of Switzerland (Hereinafter "UBS") in Zurich, Switzerland.

23. From the time she first opened an account at UBS throughout the relevant period, it was at one or more branches of UBS in Zurich, Switzerland.

24. Beginning in 1988, Plaintiff held a Power of Attorney (POA) to his wife's UBS account.

4

*The United States, the John Doe Summons and Plaintiff's Wife's UBS Account*

25. In 2008, the United States government moved against the Swiss Banking industry searching for possible United States taxpayers hiding assets in Swiss bank accounts.

26. On June 30th 2008, the United States Justice Department asked the U.S. District Court for the Southern District of Florida to serve what is known as the "John Doe summons" on UBS to obtain information about possible accounts being held by United States persons whose identities were unknown.

27. On July 1, 2008, the U.S. District Court for the Southern District of Florida issued an order to direct UBS to produce records identifying U.S. taxpayers with accounts at UBS in Switzerland.

28. Plaintiff became embroiled in the dispute between the United States and UBS when Plaintiff's wife's account number was mistakenly included.

29. The provision by UBS of information and documents related to the account of Esther Zuhovitzky to the United States government was done wrongfully, and in violation of Swiss Banking law by UBS.

30. As a result of the John Doe Summons, the IRS received more than thousand pages of documents from UBS related to Esther Zuhovitzky's account.

31. Documentation received by the IRS from UBS unequivocally identified Esther Zuhovitzky as the sole beneficial owner of the account.

32. Documentation received by the IRS from UBS unequivocally identified Esther Zuhovitzky as a citizen of Austria and Israel.

33. Documentation received by the IRS from UBS unequivocally stated that Plaintiff was not a beneficial owner of the account and held only a Power of Attorney.

*34.* The Department of Treasury has conceded that Plaintiff had no property rights over the assets in the UBS account and that Plaintiff's wife was never a citizen or resident of the United States.

### Audit and Investigation by Internal Revenue Service

*35.* Because of the information obtained from UBS regarding Esther Zuhovitzky's account, on March 8, 2011, Internal Revenue Officer Fhirdosa Khatib (hereinafter "Khatib") initiated an audit of Tax Year 2008 for the joint individual tax returns of Petitioner and his wife.

*36.* On April 9, 2012, Khatib determined to expand the audit to include tax years 2006 and 2007.

*37.* During the income tax audit, Khatib also determined to pursue the assessment of a civil penalty against Plaintiff for failing to include his wife's account on his FBAR report.

*38.* Throughout the time period of the audit, agent Khatib blatantly, and contrary to IRS policy and the taxpayer's rights, refused to share the nature of the audit or the source of her information with Plaintiff's representatives.

*39.* According to documents included in the official record of this matter, there is clear evidence that very early on agents of the IRS determined to unjustly and maliciously prosecute Plaintiff and thereafter purposefully ignored the actual facts and evidence.

*40.* In September 2012, Khatib referred Plaintiff's case to the Criminal Investigation division of the Internal Revenue Service. The matter was accepted and assigned to IRS SA Justin Christman on January 16, 2013.

*41.* In April 2013, Khatib was informed by the criminal investigation team that the proper focus of the FBAR investigation was on "unreported income and not whether taxpayer should have filed FBAR".

*42.* In November 2013, Khatib was informed that criminal investigation would be closing Plaintiff's case without pursuing it further due to the fact that Plaintiff's wife was not a United States citizen.

*43.* The summary report from the IRS Criminal Investigation division, dated December 31, 2013 indicated that the investigation was initiated by Khatib because "Zuhovitzky, an investment advisor, failed to disclose the existence of his wife's UBS account during 2005 through 2008". "According to the referral, Zuhovitzky, a US citizen, served as the power of attorney for his wife, Esther's UBS account beginning in 2002".

*44.* The C.I. report clearly states that Zuhovitzky's wife was an "Austrian national citizen and non-U.S. citizen".

*45.* The C.I. report clearly states that while Zuhovitzky failed to include the UBS account in his FBAR report, "Zuhovitzky provided his tax preparer with documentation relating to an Israeli account that was in Zuhovitzky's name and consequently….FBARs were filed relating to the Israeli account".

*46.* The reasons stated by the C.I. agent for closing the investigation with no further action included: "the investigation was "unable to adequately establish willfulness for Zuhovitzky"; "the subject's wife inherited the funds in the UBS account"; "Zuhovitzky did not have any ownership interest of the account; and "the investigation did not show that Zuhovitzky had deposited any unreported income in the UBS account which could have helped to show intent".

*Proposed Assessment of Willful FBAR Penalty on Jonathan Zuhovitzky for Tax Year 2007*

*47.* Despite the findings of the criminal investigator and her own actual knowledge of the supporting facts, on April 9, 2014, Khatib issued IRS Letter 3709, proposing to assess a willful FBAR penalty against Jonathan Zuhovitzky for Tax Year 2007 in the amount of Five Million, One Hundred and Twenty-Three thousand ($5,123,000.00) dollars.

*48.* The IRS Letter 3709 was signed by Khatib's Group Manager, Lauren Staley.

*49.*  However, the IRS failed to show that Plaintiff's failure to include his wife's account on his FBAR report was "willful" as is required to sustain a willful penalty under 31 lude his wU.S.C.§5321(a)(5).

*50.* The IRS failed to account for the fact that Plaintiff was never the owner of the account or its assets and held only signatory authority for his wife's account.

*51.* In direct contradiction to the known facts, the Letter 3709 issued by Khatib wrongfully proposed to a penalty for "violating the reporting or record keeping requirements relating to ***accounts you maintain*** with financial institutions overseas". (***Emphasis added***)

*52.* The IRS failed to account for the fact that the proposed penalty is assessed only to the failure to report the UBS account of Plaintiff's wife, a non- U.S. person.

*53.* The IRS failed to account for the fact that the Plaintiff accurately reported a foreign account of which he was a beneficial owner to his tax preparer and that his FBAR reports were regularly filed.

*54.* The Letter 3709 indicated that if:

"If you do not agree to the assessment and collection of the proposed penalty or penalties, you can request a conference with our Appeals Office. To do so, forward a written protest in duplicated before the designated response date, and mail to the revenue agent indicated above."

*55.* The Letter 3709 indicated that if the taxpayer did "not take any action by the response date noted above, we will assess the penalty and begin collection procedures".

*56.* On June 20, 2014, Zuhovitzky's counsel timely overnighted the Formal Protest to Appeals to Khatib, indicating Plaintiff's disagreement with the proposed penalty.

*57.* Plaintiff's Formal Protest to Appeals made clear the legal arguments that the outrageous proposed FBAR penalty was based on a misstating of known facts and was a violation of Zuhovitzky's rights under both the Fifth and Eighth Amendments of the United States Constitution.

*58.* Despite the timely receipt of Plaintiff's Formal Protest to Appeals, on June 27, 2014 the IRS ***did not follow proper IRS procedures*** and mailed Letter 3708 stating that the penalty was being finalized, and demanding payment of $5,123,000.00 from Plaintiff.

*59.* On August 21, 2014, Plaintiff was informed that his case had been received for consideration by the Atlanta, GA Appeals Office via Letter 4141 sent by Appeals Officer Wyonne Edwards and signed by Appeals Team Manager, Jennifer R. Sawyer.

*60.* The Letter 4141 explicitly states that:

> Appeals is separate and independent of the IRS office taking the action that you disagree with. We review and resolve disputes in a fair and impartial manner to both you and the government by applying the law and judicial decisions to the facts. We'll ***consider the facts in your case*** and try to resolve the dispute based on the information you provided to Examination. We will make every effort to reach a resolution with you in a manner that is fair and impartial to both you and the government. (e***mphasis added)***

*61.* Via IRS Letter 5143 dated July 16, 2015, Appeals Team Manager Jennifer Sawyer notified Plaintiff that she was sustaining the determination that "you willfully failed to file the FBAR for 2007" because … "you were required to disclose ***your account at a foreign bank*** and file an FBAR for 2007… yet failed to file a FBAR for ***all of your foreign accounts.*** (emphasis ***added)***

9

*62.* All IRS employees involved in Plaintiff's case had full access to over thousands of pages of documentation received by the United States from UBS and therefore had actual and concrete knowledge that the owner of the account was a non-U.S. person and that Plaintiff held no financial interest in the UBS account.

*63.* A "financial interest" is defined in **31 CFR § 1010.350 (e)- Reports of foreign financial accounts** as:

(e) *Financial interest.* A financial interest in a bank, securities or other financial account in a foreign country means an interest described in this paragraph (e):

(1) *Owner of record or holder of legal title.* A United States person has a financial interest in each bank, securities or other financial account in a foreign country for which he is the owner of record or has legal title whether the account is maintained for his own benefit or for the benefit of others. If an account is maintained in the name of more than one person, each United States person in whose name the account is maintained has a financial interest in that account.

*64.* Under 31 CFR § 1010.350 (f)- Reports of foreign financial accounts:

**f)** *Signature or other authority -*

(1) *In general.* Signature or other authority means the authority of an individual (alone or in conjunction with another) to control the disposition of money, funds or other assets held in a financial account by direct communication (whether in writing or otherwise) to the person with whom the financial account is maintained.

(2) *Exceptions* - (i) An officer or employee of a bank that is examined by the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System,

the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, or

the National Credit Union Administration need not report that he has signature or other

authority over a foreign financial account owned or maintained by the bank if the officer

or employee has no financial interest in the account.

*65*.    Both Khatib and Sawyer issued official Internal Revenue determinations in which

they knowingly made and relied upon false statements. as the basis to violate Plaintiff's

constitutional rights.

*66.* Both Khatib and Sawyer used their knowingly false statements as the basis of their

outrageous determinations to charge Plaintiff with willful failure to file an FBAR on the

UBS account thereby violating Plaintiff's constitutional rights.

*67*. The IRS Appeals team violated IRS guidance regarding the administrative review of

FBAR penalties in a timely manner. *See:* http://www.irs.gov/irm/part8/irm_08-011-

006html

*68*.  The IRS also failed to consider that Plaintiff meets all four (4) of the threshold

conditions that justify the imposition of a penalty less than the maximum. These

conditions are (1) the person has no history of past FBAR penalty assessments or

criminal tax or Bank Secrecy convictions for the preceding ten years; (2) no money

passing through any of the foreign accounts associated with the person was from an

illegal source or used to further a criminal purpose; (in fact no funds related to Plaintiff

ever passed through his wife's UBS account)  (3) the person cooperated during the

examination; (4) the IRS did not sustain a civil fraud penalty against the person for

underpayment for the year(s) in question due to the failure to report income related to any

11

amount in a foreign account.  I.R.M. 4.26.16.6.6.1 to the specific facts of this case. *See*:

https://www.irs.gov/irm/part4/irm_04-026-016#idm140512322717264

*69*. Through negligence, or bad faith, both Agent Khatib and Appeals Team Leader Sawyer rushed to finalize the penalty against Plaintiff, falsely claiming a short statute time, in contradiction of IRS policy and Department of Treasury advisories. These actions violated Plaintiff's Fifth Amendment due process right to a meaningful and timely administrative review.

*70*. According to the Letter received by Plaintiff from Jennifer Sawyer, Plaintiff's only options for challenging the FBAR penalties was:  either (1) pay the penalty and file a refund suit, or (2) wait until the government files suit in district court to collect the penalty and challenge the assessment.

*71*. Where the UBS account and the assets held therein were indisputably not the property of the Plaintiff, Zuhovitzky was in no position to pay a penalty of such magnitude and thereafter file a refund suit.

*72.* The Government did not pursue a civil action against Zuhovitzky within the statutory two-year period to recover the proposed penalty. **31 U.S.C.§5321(b)(2)**

*73.* On May 3, 2017, Plaintiff was informed via notice from the U.S. Department of Treasury that a debt owed by him had been referred to the U.S. Department of the Treasury, Bureau of the Fiscal Service and that "Treasury would withhold up to 15 percent of Plaintiff's monthly Social Security benefit payment beginning no sooner than 07/2017".

*74.*. On July,03,2017 Plaintiff was notified that the Bureau of the Fiscal Service had offset Plaintiff's social security payment by the amount of $245.00.

*75.* The Bureau of Fiscal Service continued to offset Plaintiff's social security payment from July 2017 through April 2019.

*76.* In 2017, the Bureau of Fiscal Services garnished a total of $1,472.40 from Plaintiff's Social Security benefits.

*77.* In 2018, the Bureau of Fiscal Services garnished a total of $2,755.20 from Plaintiff's Social Security benefits.

*78.* In 2019, the Bureau of Fiscal Services garnished a total of $1,035.00 from Plaintiff's Social Security benefits.

*79.* Following the final deduction of $258.75 from Plaintiff's Social Security benefits on April 03, 2019, the Bureau of the Fiscal Service discontinued Plaintiff from the offset program.

*80.* Plaintiff has confirmed by phone conversation with the Bureau of the Fiscal Service that his debt has been removed from the offset program.

*81.* Plaintiff was informed by phone conversation with the Bureau of the Fiscal Service that the proposed penalty remains a "debt owed to the United States" and that the total amount due is now ***greater than nine million dollars***, a penalty amount which, given the undisputed facts of the case, ***shocks the conscience!***

*82.* Plaintiff demands trial by jury as to all issues so triable.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE TREASURY and THE UNITED STATES INTERNAL REVENUE SERVICE**

**(ILLEGAL EXACTION)**

**The Little Tucker Act as to All Defendants 28 U.S.C.A. §1346(a)(2)**

*83.* Plaintiff repeats and restates each of the foregoing allegations as if set forth in their entirety.

*84.* The actions set forth above constitute an illegal exaction as money was improperly paid, exacted or taken from Plaintiff. Defendants have Plaintiff's money and should be ordered to return those funds.

*85.* The Little Tucker Act provides that "the district courts **s**hall have original jurisdiction, concurrent with the United States Court of Federal Claims" of a "civil action against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express of implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C.§1346(a)(2).

*86.* The Little Tucker Act waives sovereign immunity for claims for money damages against the United States where the claimant can demonstrate that the source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained". <u>United States v. Mitchell,</u> 463 U.S. 206, 216-17 (1983); *quoting* <u>United States v. Testan,</u> 424, U.S.392, 398,400 (1976).

*87.* An illegal exaction involves the deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution.

*88*.  The actions of all Defendants in the  offset of Plaintiff's social security payments as partial payment of the FBAR penalty represents an illegal exaction by the government that was "improperly paid, exacted, or taken from the Plaintiff in contravention of the Constitution, a statute, or a regulation." Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002, 1007 (1967).

*89.* Plaintiff has sustained injury by the conduct constituting Defendants' illegal exaction of Plaintiff's social security payments that were improperly paid, exacted, or taken from Plaintiff in contravention of the Constitution, a statute, or a regulation.

*90*. Defendants' imposition of a willful FBAR penalty and the sustaining of such penalty based on Defendants' failure to properly consider either the true facts or IRS policy and procedures, has resulted in $5,262.60 being improperly paid, extracted or taken from Plaintiff in contravention of the Constitution, a statute or regulation, including but not limited to 31 U.S.C. §5321 and the Fifth Amendment to the Constitution.

*91*. Accordingly, Plaintiff hereby seeks the return of the money illegally exacted by the defendants.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE TREASURY and THE UNITED STATES INTERNAL REVENUE SERVICE**

**Violation of Plaintiff's Due Process Rights Under the Fifth Amendment of The Constitution**

**(as to all Defendants)**

*92.* Plaintiff repeats and restates each of the foregoing allegations as if set forth in their entirety.

*93*. The actions set forth above constitute a violation of Plaintiff's Constitutional right to Due Process under the Fifth Amendment.

*94.* The central meaning of procedural due process is clear. "Parties whose rights are to be affected are entitled to be heard". Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972).

*95.* It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner". Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62.

*96. "*The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement more particularly, to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property.  So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference."   Fuentes v. Shevin, 407 U.S. 67, 80-81 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972); *See also*; Lynch v. Household Finance Corp., 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424.

*97.*  The Supreme Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect. 'That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest. ' Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113.

*98.* Defendants' imposition of a willful FBAR penalty given the uncontested facts of this matter has resulted in $5,262.60 being improperly paid, extracted or taken from Plaintiff in contravention of the Fifth Amendment to the Constitution.

*99*. Plaintiff's only options, (as claimed by the Government) for challenging the FBAR penalty was:  either (1) pay the penalty and file a refund suit, or (2) wait until the government files suit in district court to collect the penalty and challenge the assessment.

*100.* The government did not bring suit in a federal district court within the prescribed statutory time frame, thereby foreclosing Plaintiff from challenging the assessment of the penalty as a defense through that means.

*101.* Where Plaintiff held only signatory power to another's account and had no beneficial ownership in either the account or its assets, the proposed "to be heard" by "Paying the penalty and filing a refund suit" fails to provide any meaningful manner for Plaintiff to obtain procedural due process.

*102*. Accordingly, Plaintiff hereby seeks a finding that his constitutional rights under the Fifth Amendment have been violated and a true and meaningful opportunity to be heard and to contest the imposition of the willful FBAR penalty by the IRS through *de novo* review by this Court.

**AS AND FOR A THIRD OF CAUSE OF ACTION**
**Violation of Plaintiff's Constitutional Rights Under the Eighth Amendment of the Constitution**
**(as to all Defendants)**

*103.* Plaintiff repeats and restates each of the foregoing allegations as if set forth in their entirety.

*104.* The actions set forth above constitute a violation of Plaintiff's Constitutional rights under the Eighth Amendment.

17

**105.** The Eighth Amendment states "Excessive bail shall not be required, ***nor excessive fines imposed***, nor cruel and unusual punishments inflicted". U.S. Constitution, Amendment 8 (***emphasis added***).

**106.** The Supreme Court has held that "the Eighth Amendment's text is not expressly limited to criminal cases, and its history does not require such a limitation. Rather, the crucial question is whether it is monetary punishment, with which the Excessive Fines Clause is particularly concerned. Because sanctions frequently serve more than one purpose, the fact that it serves remedial goals will not exclude it from the Clause's purview, so long as it can only be explained as serving in part to punish. Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed. 2d 488 (1993); *citing*: United States v. Halper, 490 U.S. 435, 448, 109 S.Ct 1892, 1901, 104 L.Ed. 2d 487.

**107.** "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 118 S.Ct.2028, 141 L.Ed. 2d 314 (1998) quoting Austin v. United States, 509 U.S. 602, 622-23.

**108.** The willful penalty assessed against Plaintiff for over five million dollars was for failure to include his wife's UBS account on his FBAR filings. Plaintiff held only signatory authority over this account. The beneficial owner of the account and its assets was a foreign individual with no duty to either report the account or pay tax to the United States on income therefrom.

**109.** The primary focus of the FINCEN regulations surrounding the FBAR is to ensure that U.S. taxpayers are not hiding funds taxable by the United States in offshore accounts and thus depriving the national fisc of funds.

*110.* The final report of the criminal investigation of this matter , concluded that: "the subject's wife is a non-U.S Person; "the subject's wife inherited the funds in the UBS account" from a non-U.S. person;  "Zuhovitzky did not have any ownership interest of the account;  and "the investigation did not show that Zuhovitzky had deposited any unreported income in the UBS account which could have helped to show intent".

*111*. Thus the imposition of this penalty, bears no relationship to the gravity of the offense, is purely punitive in nature and where according to government report, has now risen **to over NINE MILLION DOLLARS** is purely punitive and ***SHOCKS THE CONSCIENCE.***

*112.*  Accordingly, Plaintiff hereby seeks a finding that the above penalty violates his constitutional rights under the Eight Amendment and that the penalty, as imposed*, **CANNOT STAND and MUST BE REMOVED.***

### AS AND FOR A FOURTH ACTION
**Violation of Plaintiff's Due Process Rights Under the Fifth Amendment of the Constitution**
**(Biven's Action as to Individual Defendants Khatib and Sawyer)**

*113.* Plaintiff repeats and restates each of the foregoing allegations as if set forth in their entirety.

*114.* Because the FBAR is not a "tax law" the comprehensive statutory scheme for administrative review of individual assessment and collection activities of IRS under 26 U.S. Code §7433 do not apply. *See: *Hudson Valley Black Press v. Internal Revenue Service, 307 F.Supp. 2d 543(S.D.N.Y 2004); Roberts v. I.R.S, 468 F.Supp.2d 644 (S.D.N.Y. 2006).

*115.* By information and belief, the Secretary of the Treasury has failed to establish a parallel statutory scheme for administrative review of individual assessment and collection activities of FBAR related matters.

*116.* Upon notice of the assessment of the FBAR penalty, Plaintiff was informed by the IRS that his only further options for review were:  either (1) pay the penalty and file a refund suit, or (2)

wait until the government files suit in district court to collect the penalty and challenge the assessment.

*117.* Sovereign immunity does not shield federal officials from judicial scrutiny where they commit constitutional torts in their individual capacities. Modest Needs Foundation v. Bianco, et al. , 2017 WL 3130416, (S.D.N.Y. 2017) *citing:* Bivens v. Six Named Agents, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

*118*. "The Supreme Court has recognized as implicit in certain constitutionally protected rights a federal claim for money damages against federal officials, sued in their individua capacities, for violations of those rights." M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir 2013).

*119.* A Bivens complaint "provides a judicially-created remedy stemming directly from the Constitution itself". Arar v. Ashcroft , 585 F.3d  559, 571 (2d Cir. 2009) *citing;* Bivens v. Six Unknown Agents, 403 U.S. at 397.

*120.* The Supreme Court has recognized that discrimination in violation of the Due Process Clause of the Fifth Amendment is an appropriate use of the remedies available under Bivens. Davis v. Passman, 442 U.S. 228, 248-49. (1979).

*121.* Both Khatib and Sawyer violated the guidelines, provisions, policies, and procedures of their employer, the Internal Revenue Service, thereby making them subject to suit in their individual capacity.

Both Khatib and Sawyer issued official Internal Revenue determinations in which they knowingly made and relied upon false statements. as the basis to violate Plaintiff's constitutional rights.

*122.* Both Khatib and Sawyer used their knowingly false statements as the basis of their outrageous determinations to charge Plaintiff with willful failure to file an FBAR on the UBS account thereby

violating Plaintiff's constitutional rights under both the Fifth and Eighth Amendments of the United States Constitution.

*123.*   Both Khatib and Sawyer, violated IRS guidance regarding the administrative review of FBAR penalties in a timely manner, thereby violating Plaintiff's due process rights under the Fifth Amendment. *See:* http://www.irs.gov/irm/part8/irm_08-011-006html

*124.* Through negligence or bad faith, both Agent Khatib and Appeals Team Leader Sawyer rushed to finalize the penalty against Plaintiff, falsely claiming a short statute time, in contradiction of IRS policy and Department of Treasury advisories. These actions violated Plaintiff's Fifth Amendment due process right to a meaningful and timely administrative review.

*125.* Both Khatib and Sawyer acted intentionally and with bad faith to impose an excessive fine upon Plaintiff in clear violation of his constitutional rights under the Eighth Amendment of the United States Constitution.


*WHEREFORE*, Plaintiff demands judgment against the Defendants as follows:

    **a.**   Repayment of monies garnished from Plaintiff's social security funds.

    **b.**   Declaration that all debts claimed to be owed by Plaintiff to Defendants concerning this action are null, void and of no force and effect.

    **c.**   Compensatory damages in an amount to be determined at trial.

    **d.**   Statutory damages in an amount to be determined at trial.

**e.**   Punitive damages in an amount to be determined at trial.

**f.**   Attorney's fees, costs and interest.

g.   For all such other and further relief as the Court deems just, proper, and equitable.

Dated: Chester, New York
        June 26, 2020

COHEN, LABARBERA & LANDRIGAN, LLP

/s/ Melissa A. Perry
_____

Melissa A. Perry, Esq.
NY Bar # 5363767
99 Brookside Avenue
Chester, New York 10918
Tel: (845) 291-1900
Fax: (845) 291-8601
Email: MPerry@cll-law.com
*Attorneys for Plaintiffs*