**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JONATHAN ZUHOVITZKY,

                    Plaintiff,

            v.

THE UNITED STATES OF AMERICA; THE
UNITED STATES DEPARTMENT OF THE
TREASURY; THE UNITED STATES INTERNAL
REVENUE SERVICE; FHIRDOSA KHATIB (in
her Capacity both as a Federal Employee and
Individually); and JENNIFER SAWYER, (in her
capacity both as a Federal Employee and
Individually),

                    Defendants.

No. 20 Civ. 4937 (JGK)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2737
Fax: (212) 637-2702
Email: lucas.issacharoff@usdoj.gov

LUCAS ISSACHAROFF
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................ 2

   I.  The UBS Account .................................................................................................. 2

   II.  Assessment and Administrative Proceedings ......................................................... 4

   III. Current Status ....................................................................................................... 6

   IV. Plaintiff's Complaint ............................................................................................ 7

ARGUMENT .................................................................................................................... 7

   I.  Standard of Law ................................................................................................... 7

   II.  The FBAR Penalty Was Properly Assessed and the Court Should Grant Summary Judgment as to Plaintiff's Little Tucker Act Claim ................................................ 8

      A.  FBAR Legal Framework ................................................................................. 8

      B.  Plaintiff Was Required to Report His Interest in the UBS Account .............. 10

      C.  The Finding of Willfulness Was Appropriate ............................................... 11

   III. The Court Should Award Summary Judgment to Defendants on Plaintiff's Fifth Amendment Claim ............................................................................................... 13

      A.  Plaintiff Received Adequate Administrative Process .................................... 13

      B.  Due Process Does Not Require Pre-Payment Judicial Review ...................... 16

   IV. Plaintiff Fails to State an Eighth Amendment Claim ........................................... 17

      A.  A Civil FBAR Penalty Is Not a Fine Within the Meaning of the Eighth Amendment17

      B.  The Penalty at Issue Is Not Constitutionally Excessive ............................... 18

   V.  Plaintiff's *Bivens* Claims Should Be Dismissed ................................................ 21

      A.  The Court Should Not Recognize a *Bivens* Action Against the Individual Defendants ................................................................................................... 21

          1. Plaintiff's Claims Arise in a New Context ..................................... 22

          2. The Court Should Not Recognize Plaintiff's Novel *Bivens* Claims ................ 24

      B.  In the Alternative, the Individual Defendants Are Entitled to Qualified Immunity ... 26

CONCLUSION ................................................................................................................ 27

# TABLE OF AUTHORITIES

## Cases

*Abdoulaye v. Cimaglia*,
   No. 15 Civ. 4921 (PKC), 2018 WL 1890488 (S.D.N.Y. Mar. 30, 2018) ................................ 24

*Ali v. Reno*,
   22 F.3d 442 (2d Cir. 1994) ................................................................................................... 14

*Am. Towers, Inc. v. Williams*,
   146 F. Supp. 2d 27 (D.D.C. 2001) ...................................................................................... 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................................... 8

*Anemone v. Metro. Transp. Auth.*,
   629 F.3d 97 (2d Cir. 2011) ..................................................................................................... 8

*Armstrong v. Manzo*,
   380 U.S. 545 (1965) ............................................................................................................. 13

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ............................................................................................................. 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 7, 8, 27

*Bedrosian v. United States*,
   912 F.3d 144 (3d Cir. 2018) ...................................................................................... 9, 10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 7

*Bivens v. Six Unknown Named Agents*,
   403 U.S. 388 (1971) ............................................................................................................... 2

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*,
   492 U.S. 257 (1989) ............................................................................................................. 17

*Canada v. United States*,
   950 F.3d 299 (5th Cir. 2020) ............................................................................................... 23

*Carlson v. Green*,
   446 U.S. 14 (1980) ................................................................................................... 21, 22, 24

*Collins v. SEC*,
   736 F.3d 521 (D.C. Cir. 2013) ............................................................................................ 20

*Colon v. Maddalone*,
   No. 95 CIV. 0008 (JGK), 1996 WL 556924 (S.D.N.Y. Oct. 1, 1996) ................................ 25

*Crawford v. U.S. Dep't of Treasury*,
   15 Civ. 250, 2015 WL 5697552 (S.D. Ohio Sept. 29, 2015) ......................................... 19, 20

*Davis v. Passman*,
   442 U.S. 228 (1979) ............................................................................................................. 21

*Dewees v. United States*,
   272 F. Supp. 3d 96 (D.D.C. 2017) ...................................................................................... 19

*Dotson v. Griesa*,
   398 F.3d 156 (2d Cir. 2005) ................................................................................................ 14

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) ............................................................................................................... 13

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................. 26
*Kelly v. EPA,*
    203 F.3d 519 (7th Cir. 2000) ................................................................... 20
*Kramer v. Time Warner Inc.,*
    937 F.2d 767 (2d Cir. 1991) ...................................................................... 8
*Larson v. United States,*
    888 F.3d 578 (2d Cir. 2018) .................................................................... 16
*Modest Needs Foundation v. Bianco,*
    No. 16 Civ. 3144 (HBP), 2017 WL 3130416 (S.D.N.Y. July 21, 2017) ................ 25
*Moore v. United States,*
    No. C13-2063RAJ, 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015) .......... 17, 19, 25
*Morrissey v. Brewer,*
    408 U.S. 471 (1972) ................................................................................. 16
*Morton v. Cty. of Erie,*
    796 F. App'x 40 (2d Cir. 2019) ............................................................... 15
*Mullenix v. Luna,*
    577 U.S. 7 (2015) ..................................................................................... 26
*Negron v. United States,*
    No. 19 Civ. 5442 (PMH), 2020 WL 5634304 (S.D.N.Y. Sept. 21, 2020) ............ 23
*Nnebe v. Daus,*
    644 F.3d 147 (2d Cir. 2011) .................................................................... 15
*Norman v. United States,*
    942 F.3d 1111 (Fed. Cir. 2019) ............................................................ 9, 11
*One Lot Emerald Cut Stones v. United States,*
    409 U.S. 232 (1972) ................................................................................. 18
*Pharaon v. Bd. of Governors of Fed. Reserve Sys.,*
    135 F.3d 148 (D.C. Cir. 1998) ................................................................. 20
*Propert v. District of Columbia,*
    948 F.2d 1327 (D.C. Cir. 1991) ............................................................... 14
*Qwest Corp. v. Minn. Pub. Utils. Comm'n,*
    427 F.3d 1061 (8th Cir. 2005) ................................................................. 20
*Rivera v. Samilo,*
    370 F. Supp. 3d 362 (E.D.N.Y. 2019) ..................................................... 23
*Rodriguez v. Swartz,*
    899 F.3d 719 (9th Cir. 2018) ................................................................... 23
*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007) ................................................................................... 11
*Schwarz v. Meinberg,*
    761 F. App'x 732 (9th Cir. 2019) ............................................................ 24
*Timbs v. Indiana,*
    139 S. Ct. 682 (2019) ............................................................................... 17
*United States v. $132,245.00 in U.S. Currency,*
    764 F.3d 1055 (9th Cir. 2014) ............................................................ 19, 20
*United States v. $134,750 U.S. Currency,*
    535 F. App'x 232 (4th Cir. 2013) ............................................................ 20

*United States v. Bajakajian,*
    524 U.S. 321 (1998) ................................................................ 17, 18, 20
*United States v. Bussell,*
    699 F. App'x 695 (9th Cir. 2017) ................................................... 19
*United States v. Carrigan,*
    31 F.3d 130 (3d Cir. 1994) ............................................................. 11
*United States v. Chaplin's, Inc.,*
    646 F.3d 846 (11th Cir. 2011) ....................................................... 20
*United States v. Cheeseman,*
    600 F.3d 270 (3d Cir. 2010) ........................................................... 19
*United States v. Estate of Schoenfeld,*
    344 F. Supp. 3d 1354 (M.D. Fla. 2018) ................................... 18, 19
*United States v. Garrity,*
    304 F. Supp. 3d 267 (D. Conn. 2018) ............................................ 12
*United States v. Mackby,*
    339 F.3d 1013 (9th Cir. 2003) ....................................................... 20
*United States v. Nat'l Dairy Prods. Corp.,*
    372 U.S. 29 (1963) ......................................................................... 20
*United States v. Sperrazza,*
    804 F.3d 1113 (11th Cir. 2015) ..................................................... 20
*United States v. Viloski,*
    814 F.3d 104 (2d Cir. 2016) ..................................................... 18, 19
*United States v. Williams,*
    489 F. App'x 655 (4th Cir. 2012) ................................................... 11
*Vega v. Untied States,*
    881 F.3d 1146 (9th Cir. 2018) ....................................................... 24
*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000) ............................................................... 8
*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ....................................................................... 24
*Ziglar v. Abassi,*
    137 S. Ct. 1843 (2017) ................................................. 21, 22, 23, 24

**Statutes**

26 U.S.C. § 6707 .................................................................................. 16
28 U.S.C. § 1346(a)(2) ...................................................................... 7, 25
31 U.S.C. § 3717 .................................................................................... 6
31 U.S.C. § 5321 ........................................................................... *passim*
31 U.S.C. § 5322 ............................................................................ 18, 21

**Rules**

Fed. R. Civ. P. 5.2 .................................................................................. 3
Fed. R. Civ. P. 56 ................................................................................... 8
Fed. R. Civ. P. 12(b)(6) .......................................................................... 7

**Regulations**

31 C.F.R. § 1010.306 ................................................................................................ 9
31 C.F.R. § 1010.350 ............................................................................................. 9-10

**Other Authorities**

1970 U.S.C.C.A.N. 4394 ......................................................................................... 18

## PRELIMINARY STATEMENT

This case concerns the imposition of a penalty upon Plaintiff Jonathan Zuhovitzky for his failure to file a Report of Foreign Bank Account and Financial Accounts ("FBAR") in 2007 relating to his wife's account at Union Bank of Switzerland ("UBS") over which he had signature authority. Plaintiff challenges the assessment of a "willful" FBAR penalty against him on the grounds that (1) he did not violate the FBAR requirement or, if he did, his violation was not willful; (2) the assessment of the penalty deprived him of procedural due process; and (3) the assessment of the penalty violated the Eighth Amendment's Excessive Fines Clause. He brings suit against Defendants the United States of America, the U.S. Department of the Treasury ("Treasury"), the Internal Revenue Service ("IRS"), IRS Revenue Agent Firdosa Khatib, and IRS Appeals Team Manager Jennifer Sawyer (together, the "Individual Defendants") (collectively, the "Government").  Plaintiff cannot identify any disputed issues of material fact as to his challenges to the assessment or his due process challenge, and fails to state a claim as a matter of law as to his Eighth Amendment and *Bivens* claims.

Plaintiff does not challenge any of the essential factual underpinnings of the willful FBAR penalty. He does not contest that he was a U.S. person; that he had signature authority over the UBS account; or that the account's balance was well in excess of the threshold mandating FBAR filing. While he claims he did not have a financial interest in the account, that is irrelevant because he concededly had authority over the account, which he frequently exercised. Finally, Plaintiff's willfulness is thoroughly supported by the administrative record, and the Court should award summary judgment to the Government.

Plaintiff also alleges a violation of his due process rights based on what he claims were deficiencies in the administrative assessment process and the lack of pre-assessment judicial review. However, Plaintiff did have notice and an opportunity to be heard before the FBAR penalty

was assessed, and has additional opportunities to be heard in advance of any actual property deprivation. And pre-payment judicial review is not required in the FBAR context, as in analogous tax penalty contexts.  The Government is therefore likewise entitled to summary judgment on Plaintiff's due process claims.

Plaintiff's Eighth Amendment claim fails to state a claim as a matter of law. It is well established that the Excessive Fines Clause governs only criminal "fines." But even if the constitutional framework applied here, Congress acted well within its authority to determine the appropriate penalty for failures to report foreign assets, and Plaintiff's FBAR penalty fell within this statutory framework. The Court should therefore, in the alternative, grant summary judgment on Plaintiff's Eighth Amendment claim.

Finally, Plaintiff's claims against the Individual Defendants should be dismissed for failure to state a claim. These novel claims do not arise under any recognized application of the doctrine of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and should not be accepted here. Moreover, because the Individual Defendants did not violate any "clearly established" law, they are in the alternative entitled to qualified immunity.

## BACKGROUND

### I.      The UBS Account

Plaintiff is a dual citizen of the United States and Israel who resided in the United States during calendar year 2007. Compl. ¶¶ 7, 13-14, 16; Declaration of Firdosa Khatib ("Khatib Decl.") Ex. D at 1. Plaintiff has been married to Esther Zuhovitzky since 1969, including during 2007. Compl. ¶¶ 18-19.

On October 13, 1988, at a branch of UBS in Zurich, Mrs. Zuhovitzky opened master

account number XXX-XX8026 (the "UBS Account").[1] Khatib Decl. Ex. A. On January 14, 2002, Mrs. Zuhovitzky revoked previously conferred powers of attorney and executed a new document conferring powers of attorney on Plaintiff and two of their adult children, Amira and Ariel Zuhovitzky, authorizing each of them to act with respect to the UBS Account by their sole signatures. *Id.* Ex. B. No revocation of this power of attorney took place prior to the end of 2007. *Id.* ¶ 5. The power of attorney document explicitly authorized Plaintiff to, *inter alia*, "deposit, buy and sell, pledge and convert security/bookentry securities in [Mrs. Zuhovitzky's] name, to lodge or withdraw funds in any manner whatsoever, . . . and generally to do everything he/she/they may deem expedient or necessary." *Id.* Ex. B. Plaintiff did in fact exercise this authority, making "all investment decisions on behalf of" Mrs. Zuhovitzky without her involvement, including making numerous financial decisions during 2007. *Id.* ¶ 6, Ex. C at 1.

For tax year 2007, Mr. and Mrs. Zuhovitzky timely filed a joint Form 1040 U.S. Individual Income Tax Return. *Id.* ¶ 7, Ex. D. On Schedule B of the tax return, in Part III: Foreign Accounts and Trusts, Mr. and Mrs. Zuhovitzky listed a foreign bank account in Israel but did not list the UBS Account. *Id.* Ex. D at 4. Schedule B, Part III of the Form 1040, at line 7a, specifically asks, "At any time during 2007, did you have an interest in or a signature or other authority over a financial account in another country . . . ?" *Id.* The Form 1040 further directs the taxpayer to the "filing requirements for Form TD F 90-22.1," i.e., the FBAR reporting form. *Id.*

The value of the UBS Account was over $10,000 during 2007. *Id.* ¶ 14.

---

[1] Pursuant to Fed. R. Civ. P. 5.2 and section VI.A.1 of this Court's Individual Practices, the Government has redacted Social Security numbers and taxpayer identification numbers, dates of birth, and account numbers throughout this brief and the accompanying exhibits.

**II.     Assessment and Administrative Proceedings**

On or about June 7, 2011, IRS Agent Firdosa Khatib was assigned to conduct an income tax examination of Mr. and Mrs. Zuhovitzky. *Id.* ¶ 7. On or about June 18, 2012, her assignment expanded to include an examination of Plaintiff's compliance with the filing requirements for Treasury Form TD F 90-22, Report of Foreign Bank and Financial Accounts ("FBAR"). *Id.* ¶¶ 3, 8.

During the course of these examinations, Agent Khatib made a referral to the IRS's Criminal Investigations Division ("CI"). *Id.* ¶ 9. Per IRS procedures, the income tax and FBAR examinations were suspended from the date of the referral to CI through the date when a determination was made as to whether to pursue a criminal investigation. *Id.* ¶ 10. In a letter dated December 31, 2013, CI determined that it had declined to pursue a criminal investigation of Mr. or Mrs. Zuhovitzky, *id.* ¶ 11, and Agent Khatib then resumed the income tax and FBAR examinations, *id.* ¶ 12.

In a telephone conversation on January 27, 2014, Agent Khatib explained to Ronald Cohen, the attorney for Mr. and Mrs. Zuhovitzky, that the statute of limitations for the 2007 FBAR would expire soon and requested that they consent to an extension. *Id.* ¶ 13. Mr. Cohen informed Agent Khatib that Mr. and Mrs. Zuhovitzky had agreed to an extension, and a proposed FBAR extension form was faxed to Mr. Cohen's office the same day. *Id.* The IRS never received the executed FBAR extension form. *Id.*

On April 9, 2014, the IRS mailed Letter 3709 to Mr. Zuhovitzky. *Id.* ¶ 16, Ex. E. The letter explained that the IRS was proposing to assess a penalty against Mr. Zuhovitzky for his willful failure to file TDF 90-22.1 (the FBAR reporting form). *Id.* The letter further explained that, if Mr. Zuhovitzky disagreed, he could submit a written protest on or before April 22, 2014, setting forth the pertinent information and basis of his disagreement. *Id.* The IRS later extended Mr. Zuhovitzky's time to submit a protest to June 24, 2014. *Id.* ¶ 16. On June 20, 2014, Mr. Cohen

sent a formal written protest on behalf of Mr. Zuhovitzky. *Id.* ¶ 17, Ex. F.

On June 27, 2014, the IRS assessed an FBAR penalty of $5,123,100 against Mr. Zuhovitzky under 31 U.S.C. § 5321(a)(5) for his willful failure to file an FBAR for the UBS Account for calendar year 2007. Beasley Decl. ¶ 4, Ex. A. This penalty was calculated as half the value of the account on June 30, 2008 (when the FBAR reporting obligation arose), calculated at the December 31, 2007, rate of exchange between the Swiss franc and the U.S. dollar. Khatib Decl. ¶ 15. Also on June 27, 2014, the IRS sent Letter 3708 to Mr. Zuhovitzky, demanding payment of the FBAR penalty of $5,123,100 that had been assessed against him for his willful failure to report a foreign account under 31 U.S.C. § 5321(a)(5) for calendar year 2007. Beasley Decl. ¶ 5, Ex. B.

IRS Appeals Officer Wyvonne Edwards, who was supervised by Appeals Team Manager Jennifer Sawyer, was assigned to consider Mr. Zuhovitzky's protest of a willful FBAR penalty assessment for 2007. Sawyer Decl. ¶¶ 2-5. On August 21, 2014, Officer Edwards mailed a letter to Mr. Zuhovitzky and Mr. Cohen, acknowledging receipt of the matter in the Office of Appeals. *Id.* ¶ 7, Ex. A. The letter stated that "[i]f you have any new information or evidence that you plan on submitting, please contact me immediately. I may refer it to Examination for consideration." *Id.*

On June 18, 2015, Officer Edwards held a telephonic appeals conference with Mr. Cohen. *Id.* ¶ 8. During this conference Mr. Cohen indicated that he had additional documents that he could provide, but they were in Hebrew and needed to be translated. *Id.* Officer Edwards explained to Cohen that because the period of limitations on collection of the FBAR assessment expired on June 27, 2016, there would not be sufficient time to consider the new documents. *Id.*

In a letter dated June 23, 2015, Mr. Cohen objected to the closure of the appeals case based on the limitations period on collection of the FBAR assessment. *Id.* ¶ 9, Ex. B. On June 29, 2015,

Appeals Team Manager Sawyer responded by letter to Mr. Cohen, stating that, because Mr. Zuhovitzky had not agreed to extend the limitations period, the penalty was assessed on June 27, 2014, which in turn began the two-year period in which Treasury could file a civil lawsuit to recover the assessed penalty. *See id.* ¶ 10, Ex. C; 31 U.S.C. § 5321(b)(2). The letter further explained that Mr. Zuhovitzky had received all available documents pursuant to a Freedom of Information Act request by March 9, 2015, and that Appeals Officer Edwards had considered all of Mr. Zuhovitzky's documentation, including Mr. Cohen's June 23, 2015, letter. Sawyer Decl. ¶ 10, Ex. C. Finally, the letter explained that there was no further conference or mediation procedure available for Mr. Zuhovitzky to challenge the FBAR penalty; rather, he could challenge the assessment by paying the penalty and filing a refund suit, or by waiting until the government initiated a collection action. *Id.*

### III.    Current Status

As of July 7, 2020, Mr. Zuhovitzky has the following unpaid balances due for FBAR penalty assessments for calendar year 2007:

| Description | Balance Due as of 7/7/2020 |
|---|---|
| Principal | $5,123,100.00 |
| Assessed Interest | $244,364.86 |
| Assessed Late-Payment Penalty | $1,460,970.61 |
| Interest Pending | $64,705.45 |
| Late-Payment Penalty Pending | $388,232.73 |
| Potential Collection Fee | $2,330,039.57 |
| TOTAL | $9,611,413.22 |

Beasley Decl. ¶ 6. Interest and late-payment penalties will continue to accrue at the rates specified in 31 U.S.C. §§ 3717(a)(1) and (e)(2), while costs related to processing and handling Mr. Zuhovitzky's FBAR debt for calendar year 2007 will continue to be assessed pursuant to 31 U.S.C. § 3717(e)(1). *Id.* ¶¶ 7, 8.

Pursuant to 31 U.S.C. § 5321(b)(2) the two-year period of limitations for the Government to commence a civil action to collect Mr. Zuhovitzky's FBAR debt for calendar year 2007 expired on June 27, 2016. Beasley Decl. ¶ 9. From 2017 through 2019, the IRS garnished a total of $5,262.60 in Social Security benefits from Mr. Zuhovitzky. Compl. ¶¶ 73-80.

## IV.    Plaintiff's Complaint

Plaintiff's complaint includes four claims. First, pursuant to 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act"), it alleges that the IRS wrongfully exacted his Social Security benefits and seeks the return of the garnished benefits. Compl. ¶¶ 83-91. Second, it asserts that his Fifth Amendment due process rights were violated by either the administrative process or the absence of pre-payment judicial process. *Id.* ¶¶ 92-102. Third, it claims that the amount of the assessed FBAR penalty violated the Excessive Fines Clause of the Eighth Amendment. *Id.* ¶¶ 103-12. And finally, it alleges that Defendants Khatib and Sawyer, in their individual capacities, violated his due process rights by assessing the penalty and denying his appeal and violated his Eighth Amendment rights by imposing an excessive fine, and seeks damages from them pursuant to the *Bivens* doctrine. *Id.* ¶¶ 113-25.

## ARGUMENT

## I.    Standard of Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). While the Court accepts well-pleaded factual allegations as true, "mere

conclusory statements" and "legal conclusion[s] couched as … factual allegation[s]" are "disentitle[d] … to th[is] presumption of truth." *Id.* at 678, 681 (internal quotation marks and citation omitted). Although courts generally may not rely on material outside the pleadings under Rule 12(b)(6), they can consider any matters of public record of which they may take judicial notice, as well as documents incorporated in the complaint by reference. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

A motion for summary judgment, meanwhile, is to be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show a genuine factual dispute, the nonmoving party must cite "particular parts of materials in the record" that demonstrate a material issue. Fed. R. Civ. P. 56(c)(1)(A). "The mere existence of a scintilla of evidence in support of plaintiffs' positions will be insufficient" to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In reviewing a Rule 56 motion, a court must construe the evidence "in the light most favorable to the non-movant and draw[] all reasonable inferences in that party's favor." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011) (internal quotation marks and citation omitted). However, "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), and the existence of a factual dispute does not preclude summary judgment where "the evidence is merely colorable, or is not significantly probative," *Anderson,* 477 U.S. at 249 (citations omitted).

## II.    The FBAR Penalty Was Properly Assessed and the Court Should Grant Summary Judgment as to Plaintiff's Little Tucker Act Claim

### A.    FBAR Legal Framework

The Bank Secrecy Act of 1970 requires United States persons with foreign bank accounts to maintain records and make reports "that may be useful in 'criminal, tax, or regulatory

investigations or proceedings, or in the conduct of intelligence or counterintelligence activities.'"
*Bedrosian v. United States*, 912 F.3d 144, 147 (3d Cir. 2018) (quoting 31 U.S.C. § 5311). Section
5314[2] instructs Treasury to prescribe rules that require persons to file annual reports identifying
certain transactions or relations with foreign financial agencies. *Id.*; *Norman v. United States*, 942
F.3d 1111, 1114 (Fed. Cir. 2019). 31 C.F.R. § 1010.350, in turn, requires that certain United States
persons must annually file FBAR reports with the IRS. *Bedrosian*, 912 F.3d at 147. For the year
at issue in this case (2007), "[c]overed persons must file it by June 30 each year for foreign
accounts exceeding $10,000 in the prior calendar year." *Id.* (citing 31 C.F.R. § 1010.306(c)).

Section 5314(b)(1) authorizes Treasury to prescribe "a reasonable classification of persons
subject to or exempt from a requirement under this section or a regulation under this section." The
agency has done so, and stated that "[e]ach United States person having a financial interest in, *or
signature or other authority over*, a bank, securities, or other financial account in a foreign
country" must file an FBAR report where the aggregate balance exceeded at any time $10,000 in
the prior year. 31 C.F.R. § 1010.350(a) (emphasis added); *see also id.* § 1010.306(c). "Signature
or other authority" is further defined at 31 C.F.R. § 1010.350(f) as "the authority of an individual
(alone or in conjunction with another) to control the disposition of money, funds or other assets
held in a financial account by direct communication (whether in writing or otherwise) to the person
with whom the financial account is maintained."

---

[2] Unless otherwise noted, all statutory section references in this memorandum of law are to Title
31 of the United States Code.

### B.     Plaintiff Was Required to Report His Interest in the UBS Account

Plaintiff easily satisfies the requirements for filing an FBAR with respect to the UBS Account in 2007. He was a United States citizen and resident. Compl. ¶¶ 7, 13-14, 16. He had "signature or other authority" over the UBS Account during 2007. Khatib Decl. ¶ 5, 6, 14, Ex. B, Ex. C. And the UBS Account had a balance of over $10,000 during that year. *Id.* ¶ 14.

Of these requirements, Plaintiff appears to challenge only the second. Yet Plaintiff's signature authority over the account is not really in dispute. He had the authority, by his own action, to "deposit, buy and sell, pledge and convert security/bookentry securities in [Mrs. Zuhovitzky's] name, to lodge or withdraw funds in any manner whatsoever, . . . and generally to do everything he/she/they may deem expedient or necessary." *Id.* Ex. B. And not only did Plaintiff *have* such authority, it is clear that he *exercised* it: UBS documents make clear that Plaintiff made "all investment decisions on behalf of" Mrs. Zuhovitzky, and that she was not involved in the management of the UBS account. *Id.* ¶ 6, Ex. C at 1.

While Plaintiff claims that he did not have a "financial interest" in the account as defined by 31 C.F.R. § 1010.350(e), *see* Compl. ¶¶ 62-63, that is irrelevant. Plaintiff cites a provision that creates an exception for *bank officers* who have signature authority but no financial interest in an account:

> An officer or employee of a bank . . . need not report that he has signature or other authority over a foreign financial account owned or maintained by the bank if the officer or employee has no financial interest in the account.

30 C.F.R. § 1010.350(f)(2)(i). But because Plaintiff is not an officer or employee of UBS, this exception has no bearing upon Plaintiff's filing requirement. Accordingly, Plaintiff was indisputably required to file an FBAR report for the UBS account in 2007.

### C.     The Finding of Willfulness Was Appropriate

Treasury has the authority under Section 5321(a)(5)(A) to impose civil money penalties on any person who fails to file a required FBAR. *Norman*, 942 F.3d at 1114. Initially, § 5321 authorized penalties only for willful violations of § 5314, and capped the penalties at $100,000. *Id.* But in 2004, Congress amended § 5321 to authorize penalties up to $10,000 for non-willful violations of § 5321 and to increase the maximum penalty for willful violations to the greater of $100,000 or fifty percent of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5).

The Supreme Court has held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Federal courts have held that this applies in the context of willful FBAR penalties. *See Norman*, 942 F.3d at 1115; *Bedrosian*, 912 F.3d at 152; *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012).

Applying these principles, courts have developed a consistent standard for determining whether a person has acted with the recklessness sufficient to support the imposition of a willful penalty under 31 U.S.C. § 5321. The Third Circuit has held that "a person commits a reckless violation of the FBAR statute by engaging in conduct that violates 'an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.''" *Bedrosian*, 912 F.3d at 153 (quoting *Safeco Ins. Co.*, 551 U.S. at 68). "With respect to IRS filings in particular, a person 'recklessly' fails to comply with an IRS filing requirement when he or she '(1) clearly ought to have known that (2) there was a grave risk that [the filing requirement was not being met] and if (3) he [or she] was in a position to find out for certain very easily.'" *Id.* (quoting *United States v. Carrigan*, 31 F.3d 130, 134 (3d Cir. 1994)).

Plaintiff's basis for contesting willfulness is not entirely clear. His complaint variously suggests that he should not have been assessed a willful violation because CI declined to bring criminal charges against him, Compl. ¶¶ 46-47; because he was not the owner of the account, *id.* ¶ 50; or because he *did* report an account in Israel, perhaps suggesting an inadvertent failure to file an FBAR relating to the UBS Account, *id.* ¶ 53. None of these points bears upon whether Plaintiff can civilly be found to have willfully failed to file an FBAR for the UBS Account. First, although "willfulness" has the same definition for criminal and civil FBAR penalties, it is subject to a lower burden of proof in the latter context. *See United States v. Garrity*, 304 F. Supp. 3d 267, 271 n.1 (D. Conn. 2018) (citing IRS Chief Counsel Memorandum 200603026 (Jan. 20, 2006)). Second, Plaintiff's lack of ownership over the account is irrelevant because he had signature authority over it, which is all that is required. And third, Plaintiff's filing of an FBAR for the Israeli account is, if anything, evidence that he was aware of FBAR filing requirements, and thus that his failure to file with respect to the UBS Account was not inadvertent. Nor can Plaintiff argue that he was unaware of his signature authority over the account, as he utilized this authority frequently to make investment decisions. *See* Khatib Decl. ¶ 6, Ex. C.

Finally, Plaintiff argues that the IRS failed to follow its own administrative guidance regarding mitigation of penalties. *See* Compl. ¶ 68 (citing Internal Revenue Manual (I.R.M.) 4.26.16.6.6.1). This argument fails on two fronts. First, Plaintiff did not meet two of the four the regulatory criteria for mitigation, as he did not cooperate during the examination and the IRS *did* sustain a civil fraud penalty relating to his tax income from the UBS Account. *See* I.R.M. 4.26.16.6.6.1 (setting out criteria); Khatib Decl. ¶ 18 (IRS assessed income tax deficiency and civil fraud penalty for unreported income relating to UBS account); Sawyer Decl. ¶ 11 (IRS sustained deficiency and civil fraud penalty). Second, even if Plaintiff had been entitled to mitigation, it

would not have impacted the IRS's calculation of penalties. I.R.M. Exhibit 4.26.16-1 sets forth the mitigation criteria, which hold that for accounts with a maximum value of over $1,000,000 (such as the UBS Account), the mitigation guideline remains the greater of $100,000 or 50 percent of the value of the account on the day of violation, which is precisely the penalty assessed by Revenue Agent Khatib. Khatib Decl. ¶ 15.

Because Plaintiff has failed to demonstrate that he was not required to file an FBAR report, that his failure was not willful, or that the IRS should have mitigated his penalty, the Court should find that the penalty was properly imposed and award summary judgment to the Government on Plaintiff's Little Tucker Act claims.

## III.   The Court Should Award Summary Judgment to Defendants on Plaintiff's Fifth Amendment Claim

### A.   Plaintiff Received Adequate Administrative Process

Plaintiff correctly acknowledges that the touchstone of procedural due process is notice and an opportunity to be heard. *See* Compl. ¶¶ 94-95 (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Armstrong v. Manzo*, 380 U.S. 545 (1965)). He was afforded these: he received notice of the proposed FBAR penalty, *see* Khatib Decl. Ex. E (April 9, 2014, letter); was afforded the opportunity to submit—and indeed submitted—an opposition, *see id.* Ex. F (June 20, 2014, opposition), before the June 27, 2014 imposition of the penalty; and he participated in a telephonic hearing before an IRS appeals officer on June 18, 2015, long before any deprivation of his property actually occurred. Plaintiff claims that all of this process was insufficient because the telephonic hearing did not take place until after the penalty was imposed. This argument fails for three reasons: first, Plaintiff did received notice and was given an opportunity to be heard in writing prior the penalty was imposed; second, the fact that the hearing did not take place before the imposition of the penalty was caused by Plaintiff's failure to stipulate to extend the limitations

period, as his counsel promised he would do; and third, the post-imposition (but pre-deprivation) hearing afforded Plaintiff sufficient due process in any case.

First, Plaintiff did receive notice and an opportunity to be heard before the imposition of the penalty, and indeed fully participated in this process: he received notice on April 9, 2014, and responded on June 20, 2014, before the June 27, 2014 imposition of the penalty. Khatib Decl. ¶¶ 16-17, Beasley Decl. ¶ 4. That his response was made in writing rather than orally at a hearing is not constitutionally determinative. *See, e.g.*, *Am. Towers, Inc. v. Williams*, 146 F. Supp. 2d 27, 33 (D.D.C. 2001), *aff'd*, 50 F. App'x 448 (D.C. Cir. 2002) ("American Tower thus was offered an opportunity to be heard, albeit in writing rather than in person, sufficiently in advance of any final action by [agency]. In the Court's view, this notice was sufficient to adequately inform American Tower of the proposed decision and the reasons for it; both the notice and the opportunity to respond were given 'at a meaningful time and in a meaningful manner.'" (quoting *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991))).

Second, as noted *supra*, due to CI's lengthy consideration as to whether to refer the case for possible criminal charges, the proposed assessment of civil penalties was not made until shortly before the June 30, 2014, expiration of the limitations period. Khatib Decl. ¶¶ 10-15; Beasley Decl. ¶ 4. Plaintiff was offered the opportunity to extend the limitations period, and thus delay an assessment until after a hearing, but ultimately decided not to do so. Khatib Decl. ¶ 13. Plaintiff cannot complain of the lack of a pre-assessment hearing when he chose not to take advantage of the available mechanisms that would have allowed for one. *See, e.g.*, *Dotson v. Griesa*, 398 F.3d 156, 161 n.2 (2d Cir. 2005) (finding that the plaintiff could not complain that his termination was in violation of due process because he "failed to avail himself of the very administrative procedures he attacks as inadequate"); *Ali v. Reno*, 22 F.3d 442, 449 (2d Cir. 1994) ("Clearly, the availability

of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure." (alterations, internal quotation marks, and citation omitted)).[3]

Third, and most importantly, the fact that the hearing occurred after the *assessment* of the FBAR penalty is irrelevant to the question of whether it occurred prior to a *deprivation* of Plaintiff's property. As the Second Circuit has noted, "[d]ue process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as some form of hearing is provided before an individual is finally deprived of the property interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (emphasis in original; alterations, internal quotation marks, and citation omitted). Here, while the FBAR penalty may have been assessed prior to the June 18, 2015 hearing, Sawyer Decl. ¶ 8, Plaintiff does not allege that any actual *deprivation* of his property occurred until 2017, *see* Compl. ¶¶ 73-79. Accordingly, Plaintiff received all the elements of due process—

---

[3] Moreover, to the extent Plaintiff rests his due process claim upon an alleged violation of the IRS's own internal procedures, that is irrelevant to the question of whether the process afforded to Plaintiff met the constitutional minima. *See Morton v. Cty. of Erie*, 796 F. App'x 40, 44 (2d Cir. 2019) ("[A]ny purported deviations from the Board's rules and the dictates of General Municipal Law Section 812 did not rise to the level of a violation of federal constitutional due process because those deviations did not deprive Morton of notice and an opportunity to be heard. As the district court properly noted, 'once the constitutional minima have been satisfied . . . a state agency's non-compliance with promised, yet gratuitous procedural protections does not constitute a due process violation.'" (alteration in original)).

notice and meaningful opportunity to be heard both in writing and orally—long before the deprivation of any property interest.

**B.      Due Process Does Not Require Pre-Payment Judicial Review**

To the extent Plaintiff argues that he was deprived of procedural due process because he could only challenge the assessment in district court either by defending against a collection action or by paying the contested penalty and then suing for a refund, *see* Compl. ¶¶ 99-101, the Second Circuit has decisively rejected that argument in an analogous tax context. While some contexts may call for *judicial* process prior to deprivation, "[a]s the Supreme Court has noted, 'due process is flexible and calls for such procedural protections as the particular circumstance demands. . . . [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Larson v. United States*, 888 F.3d 578, 585 (2d Cir. 2018) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (alterations in original)).

In *Larson*, the plaintiff claimed that the pre-payment rule—by which the plaintiff was required to pay a penalty assessed under 26 U.S.C. § 6707 for operating an unregistered tax shelter before he could challenge the assessment in district court—violated due process. The Second Circuit, agreeing with other circuits, held that "adequate summary or administrative prepayment review of tax assessment—with adequate post-payment judicial review—provides the required constitutional procedural protections." *Id*. Here too, Plaintiff was afforded adequate notice and opportunity to be heard before the assessment of the FBAR penalty, and then was given the option

of post-payment judicial review by paying the penalty and then suing for a refund.[4] At least one

other court has concluded that this FBAR procedure satisfies due process. *See Moore v. United

States*, No. C13-2063RAJ, 2015 WL 1510007, at *11 (W.D. Wash. Apr. 1, 2015) ("The IRS's

penalty assessment procedures served all of the purposes of due process."). Plaintiff cannot

establish any defect in this procedure that deprived him of due process, and the Court should

therefore award summary judgment to Defendants on this claim.

## IV.    Plaintiff Fails to State an Eighth Amendment Claim

The Eighth Amendment prohibits excessive "fines," which include only payments made

"'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998)

(quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989));

*accord Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). And a fine violates the Excessive Fines

Clause only if it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*,

524 U.S. at 334. The penalty at issue, however, is neither a fine nor excessive.

### A.    A Civil FBAR Penalty Is Not a Fine Within the Meaning of the Eighth Amendment

The type of penalty assessed against Plaintiff is not a "fine" covered by the Eighth

Amendment, because it is not "punishment for some offense." *Id.* at 327 (internal quotation marks

omitted). In *Bajakajian*, the Supreme Court held that a sanction is a punishment if it is "imposed

at the culmination of a criminal proceeding and requires conviction of an underlying" crime. *Id.* at

328. Those conditions are absent here: a civil FBAR penalty can be imposed even where, as here,

---

[4] Needless to say, nor should Plaintiff be able to rest his due process claim on the windfall he

received when the IRS did not bring a collection action against him within the statutory time

period. Compl. ¶ 72; Beasley Decl. ¶ 9.

Treasury does not refer the matter for criminal prosecution. In fact, in 31 U.S.C. § 5322, Congress separately provided criminal penalties to punish those who willfully fail to file FBAR forms; those criminal penalties—but *not* the civil penalties at issue here—are described in the statute as "fine[s]." 31 U.S.C. § 5322(a), (b); *cf. One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235-37 (1972) (holding that civil forfeiture provisions, as distinct from parallel criminal provisions, are remedial for double jeopardy purposes).

The purpose of the civil FBAR penalty is instead at least partially remedial, which is to say that it has the "purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 329. When it enacted the BSA, Congress called the use of "secret foreign bank account[s]" the "largest single tax loophole permitted by American law," and one that caused the "debilitating effect[ ]" of "hundreds of millions" of dollars in lost tax revenues. H.R. Rep. No. 91-975, at 12-13 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397-98. Moreover, investigating secret bank accounts is time consuming and expensive. *See id.* at 4397. The civil penalties in § 5321 serve to offset these losses to the Treasury. *See United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1370-73 (M.D. Fla. 2018) (civil penalty for willful failure to file FBAR is remedial, not punitive, in nature, such that it survives the death of the person assessed). Accordingly, these penalties are not a criminal "fine," and Plaintiff thus fails to state an Eight Amendment claim as a matter of law.

### B.  The Penalty at Issue Is Not Constitutionally Excessive

Even if it were a criminal fine, the FBAR penalty against Plaintiff would not be excessive. In addressing excessiveness challenges, the courts of appeals including the Second Circuit consider factors used by the Supreme Court in *Bajakajian* to determine whether a fine is grossly disproportionate: the amount of the penalty authorized by Congress; the class of persons for whom the statute at issue was principally designed; the seriousness of the offense and the harm it caused; and a comparison with the potential criminal penalties, including imprisonment. *See, e.g.*, *United*

*States v. Viloski*, 814 F.3d 104, 110-11 (2d Cir. 2016); *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014); *United States v. Cheeseman*, 600 F.3d 270, 283-84 (3d Cir. 2010). The burden of proof is on the challenger to show that the penalty is excessive under these factors. *See Viloski*, 814 F.3d at 109. Plaintiff cannot meet that burden.

The sole court of appeals to consider an Eighth Amendment challenge to a willful FBAR penalty held that the penalty was not excessive. In *United States v. Bussell*, 699 F. App'x 695 (9th Cir. 2017), *cert. denied* 138 S. Ct. 1697 (2018), the Ninth Circuit considered the constitutionality of "an approximately $1.2 million penalty" imposed against an account holder for failing to file an FBAR for tax year 2006. *Id.* at 696. That penalty represented half of the account value for the year at issue. *See* Br. for Appellee, *United States v. Bussell*, No. 16-55272, 2016 WL 7046939, at *8 (9th Cir. filed Dec., 2016). The Ninth Circuit upheld the penalty as "not grossly disproportional to the harm she caused because Bussell defrauded the government and reduced public revenues." *Bussell*, 699 F. App'x at 696.

District courts have likewise upheld FBAR penalties against Eighth Amendment challenges. In *Estate of Schoenfeld*, 344 F. Supp. 3d at 1359, 1375, the district court held that a willful FBAR penalty in the amount of "$614,300—50 percent of [the relevant] account's $1,228,600 balance"—was not "excessive." The court in *Crawford v. U.S. Dep't of Treasury*, 15 Civ. 250, 2015 WL 5697552 (S.D. Ohio Sept. 29, 2015), rejected a facial challenge to the FBAR penalty, holding that "[a] maximum penalty fixed by Congress is due substantial deference from the courts" and that "the maximum penalty" in § 5321(a)(5)(C) "will be constitutional in at least some circumstances." *Id.* at *16. And two other courts have upheld the imposition of multiple maximum penalties for non-willful violations of the FBAR requirement. *See Dewees v. United States*, 272 F. Supp. 3d 96, 100-01 (D.D.C. 2017); *Moore*, 2015 WL 1510007, at *12-13.

Applying the *Bajakajian* factors leads to the same conclusion in this case. As an initial matter, federal statutes are entitled to a strong presumption of constitutionality, *see, e.g.*, *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963), and the Supreme Court emphasized in *Bajakajian* that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," 524 U.S. at 336. The courts therefore give substantial deference to legislative judgments regarding the appropriate penalty. *See, e.g.*, *$132,245.00 in U.S. Currency*, 764 F.3d at 1058; *United States v. $134,750 U.S. Currency*, 535 F. App'x 232, 240 (4th Cir. 2013); *Collins v. SEC*, 736 F.3d 521, 527 (D.C. Cir. 2013); *United States v. Chaplin's, Inc.*, 646 F.3d 846, 851 (11th Cir. 2011); *Crawford*, 2015 WL 5697552, at *16.

The penalty assessed against Plaintiff falls within the congressionally prescribed range. *See* 31 U.S.C. § 5321(a)(5)(C).[5] The result is that the penalty is presumptively constitutional. *See Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005); *Kelly v. EPA*, 203 F.3d 519, 524 (7th Cir. 2000); *Pharaon v. Bd. of Governors of Fed. Reserve Sys.*, 135 F.3d 148, 157 (D.C. Cir. 1998). And because Congress based the willful FBAR penalty on the account balance rather than the fiscal loss to the Government, reflecting a judgment that the harm to the tax system increases with the account balance, it is irrelevant whether the penalty in any given case is correlated with a tax loss. *See Chaplin's, Inc.*, 646 F.3d at 852 ("Congress . . . can distill the monetary value society places on harmful conduct."); *United States v. Sperrazza*, 804 F.3d 1113, 1128 (11th Cir. 2015) (acknowledging harm from structuring beyond direct financial loss); *United*

---

[5] In fact, given that the statute authorizes penalties for *every* year Plaintiff held signature authority over, but failed to disclose, the UBS account, it is highly likely that the penalty assessed represents a fraction of Plaintiff's potential penalties for his overall conduct.

*States v. Mackby*, 339 F.3d 1013, 1019 (9th Cir. 2003) (harm of false claims "extends beyond the money paid out of the treasury"). In addition, as discussed above, Plaintiff acted willfully—which means that his actions fall into the more serious category of FBAR violations.

Finally, the penalty at issue is not excessive when compared with the potential criminal sanctions for Plaintiff's actions. Those sanctions include imprisonment of up to five years in addition to a fine of up to $250,000 for an FBAR offense standing alone (and double that if there are other violations or a pattern of illegal activity). *See* 31 U.S.C. § 5322(a)-(b). The criminal penalties, in other words, include a substantial fine in addition to the prospect of a prison term—a consequence much more serious than even the maximum civil penalty permitted by § 5321(a)(5)(C). Though the Court need not reach the question, the *Bajakajian* factors therefore weigh heavily against any contention that the penalty assessed against Plaintiff violates the Eighth Amendment.

## V.      Plaintiff's *Bivens* Claims Should Be Dismissed

### A.      The Court Should Not Recognize a *Bivens* Action Against the Individual Defendants

Plaintiff brings Fifth and Eighth Amendment claims against Defendants Khatib and Sawyer in their individual capacities under the *Bivens* doctrine. However, Plaintiff fails to state such claims pursuant to the framework outlined in *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017).

Noting that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," the Supreme Court in *Abassi* directed that courts should conduct a two-part inquiry to determine whether a *Bivens* remedy is available in a given case. *Id.* at 1857. First, they should ascertain whether the "case presents a new *Bivens* context" as compared to the three specific fact patterns in which the Court had previously recognized the availability of such a remedy in *Bivens* itself, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). *Abassi*, 137

S. Ct. at 1859. If the case does present a new *Bivens* context, courts should then ask whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id*. at 1857 (quoting *Carlson*, 446 U.S. at 18). If there are, "a *Bivens* remedy will not be available." *Id*.

Under the *Abbasi* test, Plaintiff's claims against the Individual Defendants represents a new context because it differs from *Bivens*, *Davis*, and *Carlson* in significant ways—determining whether a fine assessed as a FBAR penalty was excessive and in violation of IRS policy and Treasury advisories is not analogous to any of the three previous contexts in which the Court recognized a *Bivens* remedy existed. Further, the existence of an extensive administrative process to challenge the penalty and the availability of alternate mechanisms to seek judicial review have been recognized as special factors counseling hesitation.

### 1.    Plaintiff's Claims Arise in a New Context

The Supreme Court has previously recognized *Bivens* remedies in three contexts: a Fourth Amendment "claim against FBI agents for handcuffing a man in his own home without a warrant" (in *Bivens* itself); (2) a Fifth Amendment "claim against a Congressman for firing his female secretary" (in *Davis*); and (3) an Eighth Amendment "claim against prison officials for failure to treat an inmate's asthma" (in *Carlson*). *Abbasi*, 137 S. Ct. at 1859-60. A case can be "different in a meaningful way" from these precedents in multiple ways, including but not limited to

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. In this context, "even a modest extension is still an extension," and "the new-context

inquiry is easily satisfied" by even "small" differences between the claim at issue and the Supreme Court's previously approved *Bivens* claims. *Id.* at 1864-65.

The instant case is not analogous to any of the previously recognized *Bivens* contexts. Plaintiff's claims that Defendants Khatib and Sawyer violated his Fifth and Eighth Amendment rights stem from a FBAR penalty assessed against Plaintiff and the subsequent IRS appeals process in which Plaintiff participated. While the constitutional rights at issue in the instant case arise under the Fifth and Eighth Amendments—the same constitutional provisions that were at issue in *Davis* and *Carlson*, respectively—courts have held that "simply because a plaintiff asserts the same constitutional right as one of the three recognized cases does not mean the case does not present a new context." *Rivera v. Samilo*, 370 F. Supp. 3d 362, 368 (E.D.N.Y. 2019); *see also Rodriguez v. Swartz*, 899 F.3d 719, 737 (9th Cir. 2018) ("*Abbasi* makes plain that even though a *Bivens* action lies for some constitutional violations (like the Fourth Amendment claim in *Bivens*), it does not lie for all violations (like the Fourth Amendment claim in *Abbasi*)."). Plaintiff's claims plainly arise in a different context than in either *Davis* or *Carlson*.

In *Davis*, the Court provided a *Bivens* remedy under the equal protection component of the Fifth Amendment's Due Process Clause based on a claim of sex discrimination claim, but the instant case involves a procedural due process claim arising out of an administrative FBAR assessment process, a far different context. *See Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (finding that plaintiff's "claims that IRS agents intentionally manipulated a penalty assessment to ensure he could not pay the amount and sue for a refund 'bear little resemblance to the three *Bivens* claims the Court has approved in the past'" and presented new context (quoting *Abbasi*, 137 S. Ct. at 1860); *Negron v. United States*, No. 19 Civ. 5442 (PMH), 2020 WL 5634304, *7-8 (S.D.N.Y. Sept. 21, 2020) (holding that equal protection claim regarding racial discrimination

in inmate's transfer to new facility presented new context in comparison to equal protection claim in employment context in *Davis*).

The *Carlson* Court allowed a *Bivens* remedy for a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment to a prisoner, while the instant case brings an Excessive Fines Clause claim relating to a noncriminal administrative penalty, also a meaningfully different context. *See Schwarz v. Meinberg*, 761 F. App'x 732, 733-34 (9th Cir. 2019) (finding plaintiff's Eighth Amendment claims regarding unsanitary prison cell conditions presented a new context from *Carlson*, where "a failure to treat a serious medical condition" was at issue); *Abdoulaye v. Cimaglia*, No. 15 Civ. 4921 (PKC), 2018 WL 1890488, *6 (S.D.N.Y. Mar. 30, 2018) (finding that plaintiff's Eighth Amendment claims could not survive since plaintiff was a pretrial detainee, rather than a prisoner).

Accordingly, Plaintiff's Fifth Amendment procedural due process and Eighth Amendment excessive fines claims differ meaningfully from the *Bivens* claims previously recognized by the Supreme Court.

### 2.   The Court Should Not Recognize Plaintiff's Novel *Bivens* Claims

Since the instant claim presents a new context for a potential *Bivens* claim, this court must consider whether there are "special factors counselling hesitation" in creating a constitutional remedy. *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has stated that "if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Courts have determined that these alternative processes "can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. Untied States*, 881 F.3d 1146, 1154 (9th Cir. 2018).

Here, Plaintiff had alternative means for relief for his constitutional claims. As Plaintiff notes in his Complaint, the IRS letter that notified him of the proposed FBAR penalty explained the administrative process through which he could oppose the proposed assessment. Compl. ¶¶ 47, 54. Taxpayers subject to an FBAR penalty can also bring a post-assessment administrative challenge, *see* I.R.M. 8.11.6.2, or pay the contested penalty and bring a refund action in a district courts or wait until the government files suit to collect the penalty and challenge the assessment, Moore, 2015 WL 1510007, at *11-12. Additionally, as shown in this case, a taxpayer may also bring a claim against the United States challenging the assessment under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), where the Government has collected at least a portion of the penalty.

These available alternative remedial schemes are similar to those that courts have found to counsel against extending *Bivens* claims. Thus, "numerous courts have found *Bivens* remedies unavailable in cases involving alleged Fourth and Fifth Amendment violations in connection with tax collections activities," including this Court in *Colon v. Maddalone*, No. 95 CIV. 0008 (JGK), 1996 WL 556924, at *5 (S.D.N.Y. Oct. 1, 1996) (holding that "plaintiff is not entitled to assert a *Bivens* claim to recover damages based on allegedly unconstitutional IRS collection activities," *id.* at *6); *accord, e.g.*, *Modest Needs Foundation v. Bianco*, No. 16 Civ. 3144 (HBP), 2017 WL 3130416, at *14 (S.D.N.Y. July 21, 2017) (finding that a new *Bivens* action should not be recognized in the face of a "comprehensive remedial scheme in place for plaintiffs' constitutionally-recognized interests" in the tax assessment context).

Accordingly, the Court should decline to find a *Bivens* remedy here because, pursuant to *Abbasi*, the instant case constitutes a new context, alternative remedies exist, and special factors counsel against recognizing the *Bivens* remedy in this new context.

**B.     In the Alternative, the Individual Defendants Are Entitled to Qualified Immunity**

Alternatively, even if the Court were to recognize a *Bivens* action in this context, Defendants Khatib and Sawyer would be entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Supreme Court has held, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks and citations omitted).

Plaintiff can identify no such clearly established right not to be subject to an FBAR assessment in the circumstances at issue. Plaintiff's individual claims against Agent Khatib and Appeals Team Manager Sawyer boil down to an accusation that they sent him IRS form letters implying that he owned the UBS Account when, in fact, he merely had signature authority over it. Compl. ¶¶ 50-52, 61-62.[6] Plaintiff cannot demonstrate that issuance of such form letters violated

---

[6] Plaintiff surrounds these modest allegations with broader charges against the IRS: that it "did not follow proper IRS procedures," *id.* ¶ 58, and that "[t]he IRS Appeals team violated IRS guidance regarding the administrative review of FBAR penalties in a timely manner," *id.* ¶ 67. But any

any law, let alone "clearly established" law. Accordingly, the *Bivens* claims against Defendants Khatib and Sawyer should be dismissed for failure to state a claim or, in the alternative, summary judgment should be granted on the grounds of qualified immunity.

## CONCLUSION

For the reasons set forth herein, the Government respectfully asks that the Court award summary judgment to Defendants as to Plaintiff's Little Tucker Act and Fifth Amendment claims, and dismiss Plaintiff's Complaint for failure to state a claim under the Eighth Amendment or the *Bivens* doctrine.

Dated: December 18, 2020
     New York, New York

                                               Respectfully Submitted,

                                               AUDREY STRAUSS
                                               United States Attorney of the
                                               Southern District of New York

By:  /s/ *Lucas Issacharoff*        
        LUCAS ESTLUND ISSACHAROFF
        Assistant United States Attorney
        86 Chambers Street, Third Floor
        New York, New York 10007
        Tel.: (212) 637-2737
        Fax: (212) 637-2702
        E-mail: lucas.issacharoff@usdoj.gov

---

violations not personally attributable to Defendants Khatib or Sawyer cannot be part of a *Bivens* claim: "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

CERTIFICATION OF COMPLIANCE

I hereby certify pursuant to Section II.D of the Court's Individual Rules of Practice that this brief, excluding the caption, table of contents, table of authorities, signature, and this certification, contains 8,559 words.

By:   _/s/ *Lucas Issacharoff*_____
LUCAS ESTLUND ISSACHAROFF
Assistant United States Attorney

28