## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN ZUHOVITZKY <br>                           Plaintiff, <br><br> -against- <br><br> THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE TREASURY; THE UNITED STATES INTERNAL REVENUE SERVICE; FHIRDOSA KHATIB, (in her Capacity both as a Federal Employee and Individually) and JENNIFER SAWYER, (in her capacity both as a Federal Employee and Individually) <br>                           Defendants. | Civil Action No.: <br>   20-cv-04937-JGK <br><br> PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO DISMISS

On the Brief:


Melissa Perry, Esq.

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

INTRODUCTION AND FACTUAL BACKGROUND OF THE MATTER....**Error! Bookmark not defined.**

    Seven Important Facts to Keep in Mind ................................**Error! Bookmark not defined.**

I)   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**Error! Bookmark not defined.**

    Ownership of the Account ....................................................**Error! Bookmark not defined.**

    Statutory Definitions of Financial Interest vs. Signatory or Other Authority ................**Error! Bookmark not defined.**

    Extensions of FBAR Filing Dates for Individuals Holding Signatory Authority ..........**Error! Bookmark not defined.**

    IRS Notice 2009-62 ..............................................................**Error! Bookmark not defined.**

    IRS Notice 2010-23 ..............................................................**Error! Bookmark not defined.**

    Penalty Determination Date ..................................................**Error! Bookmark not defined.**

    Revocation of Plaintiff's Signatory Authority ......................**Error! Bookmark not defined.**

    On Filing Date for the 2007 FBAR, Plaintiff No Longer Had a Duty to Report the Account ..................................................................................**Error! Bookmark not defined.**

II)  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF "WILLFULNESS" ................**Error! Bookmark not defined.**

    Standard of Review of Willful FBAR Penalty ......................**Error! Bookmark not defined.**

    Burden of Proof ...................................................................**Error! Bookmark not defined.**

    What Constitutes "Willful" Under 31 U.S.C. §5321 ............**Error! Bookmark not defined.**

    The IRS Definition of "Willful" ..........................................**Error! Bookmark not defined.**

    The "*Safeco*" Definition of "Willful" ..................................**Error! Bookmark not defined.**

III)   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DUE PROCESS....................**Error! Bookmark not defined.**

IV)   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON THE ISSUE OF THE EIGHTH AMENDMENT "EXCESSIVE FINES" CLAUSE.**Error! Bookmark not defined.**

    The Basis for Plaintiff's Eighth Amendment Claims for Excessive Fine ...**Error! Bookmark not defined.**

V)  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON THE ISSUE OF THE *BIVENS* CLAIMS ..............................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby* 477 U.S. 242, 247-48 ............................................................10

*Armstrong v. Manzo*, 380 U.S. 545, 552. (1965) ...........................................................20

*Armstrong v. Manzo*, 380 U.S. 545, at 551 ..................................................................21

*Bedrosian v. United States*, Civil Action No. 15-5853 (E.D. Pa. Sep. 5 2017) .........................15

*Bedrosian v. United States*, Civil Action No. 15-5853 (E.D. Pa. Sept. 2017) ..........................16

*Bedrosian v. United States*, Civil Action No. 15-5853, 2017 WL 1361535 (E.D. Pa. April 20175)..........15

*Bedrosian v. United States*, Civil Action No. 15-5853, 2017 WL 3887520 (E.D. Pa. Sep. 2017) .............15

*Bedrosian v. United States*, No. 15-5853, 2017 WL 1361535 (E.D. Pa. Apr. 13, 2017)...........................14

*Bedrosian v. United States*, No. 15-5853, 2017 WL 3887520 (E.D. Pa. Sept. 5, 2017) ............................14

*Bell v. Burson*, 402 U.S. 535, 542 .................................................................................21

*Brounstein v. United States*, 979 F.2d 952, 955-56 (3d Cir. 1992) .....................................18

*Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 275 n.21 (1989) .......................25

Callahan v. Federal Bureau of Prisons, 965 F.3d 520 .........................................................29

*Carey v. Piphus*, 435 U.S. 247, 259–62 (1978).................................................................21

*Carlson v. Green,* 446 U.S. 14 ....................................................................................28

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 ..................................................................10

*Chappell v Wallace* 462 U.S. 296, 304, 103 S.Ct. 2362, 2368 (1983)........................................29

*Cheek v. United States*, 498 U.S. 192, 201 (1991) ...........................................................17

*Davis v. Passman,* 442 U.S. 228 ..................................................................................28

*Dent v. West Virginia,* 129 U.S.114, 123.  (1889)............................................................21

*E.E.O.C. v. Westinghouse Elec. Corp*., 725 F.2d 211, 218 (3d Cir. 1983) .................................16

*Eren v. Commissioner*, 180 F.3d 594, 597-98 (4th Cir. 1999) ..............................................15

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ........................................................................20

*Fuentes v. Shevin*, 407 U.S. at 81 ..............................................................................21

*Fuentes v. Shevin*, supra, 407 U.S. at 81 .....................................................................22

*Goldberg v. Kelly*, 397 U.S. 254 ................................................................................21

*Harmelin v. Michigan,* 111 S.Ct. at 2693 n. 9 ...............................................................25

*Hi-Tech Pharm., Inc. v. Crawford*, 544 F.3d 1187, 1191 (11th Cir. 2008)................................15

*Hurtado v. California,* 110 U.S. 516, 527 (1884) ............................................................21

*Joint Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 172 (1951) .....................................22

*Londoner v. City & County of Denver*, 210 U.S. 373, 385-86 ..............................................21

*Lynch v. Household Finance Corp.,* 405 U.S. 538, 552 ......................................................21

*Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) .............................................................22

*Mullane v. Central Hanover Tr. Co*., 339 U.S. 306 at 313 ..................................................21

*Opp Cotton Mills v. Administrator*,312 U.S. 126, 152-53 ...................................................21

*Parratt v. Taylor, 451* U.S. 527, 549 (1981) .................................................................21

*Ratzlaf v. United States*, 510 U.S. 135, 141-42, 114 S.Ct. 655, 126L.Ed. 2d 615 (1994)...........................17

*Reich v. Local 89* , 36 F.3d 1470, 1474 (9th Cir. 1994) ........................................................15

*Rupert v. United States*, 225 F.R.D. 154, 157 (M.D. Pa. 2004) ..........................................15

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) ........................................................18

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed. 2d 1045(2007) ..............16

*U.S. S.E.C. v. Pirate Investor LLC*, 580 F.3d 233,239 (4th Cir. 2009) ....................................14

*U.S. v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, New York*, 954 F.2d 29, 35 (2nd Cir. 1992) ........................................................25

*U.S. v. Certain Real Property and Premises*, 954 F.2d 29, 37 (2nd Cir. 1992) ..........................26

*United States ex rel. Marcus v. Hess*, 317 U.S. 537, 554 (1943) ............................................24

*United States Trust Co. of N. Y.* v. *New Jersey*, 431 U.S. 1, 25-26 (1977) .............................25

*United States v Bajakajian* 524 U.S. 321, 336 (1998) ..........................................................23

*United States v McBride*, 908 F. Supp.2d 1186 (D. Utah 2012) ............................................15

*United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014) .................28

*United States v. Bajakiian*, 524 U.S. 321, 334 (1998) ..........................................................28

*United States v. Garrity*, 304 F.Supp. 3d 267,271 n.1. (D.Conn. 2018) .................................17

*United States v. Halper*, 490 U.S. 435, 447– 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) ..........24

*United States v. Halper*, 490 U.S. 435, 448 ........................................................................25

*United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d. ......................23

*United States v. Illnois Central R. Co.*, 291 U.S. 457, 463 .....................................................21

*United States v. Kahn* (E.D. NY 2019) Slip Copy 2019 WL 8587295 ......................................24

*United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012) ..................................14

*United States v. McBride*, 908 F.Supp.2d 1186 .................................................................15

*United States v. Williams*, 489 F. App'x 655 (4th Cir. 2012) ...............................................14

*United States v. Williams*, No. 09-437, 2010 WL 3473311, at *1 (E.D. Va. Sept. 1, 2010) .............14

*United States v. Williams*, No. 09-437, 2010 WL 3473311, at 1 (E.D. Va. Sept. 1, 2010) ..............14

*Wisconsin v. Constantineau*, 400 U.S. 433, 437 .................................................................21

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 1859 *citing*; *Chappell* v. Wallace 462 U.S. 296 (1983) .............29

## Statutes

31 C.F.R. §5321 ........................................................................................................16

31 U.S.C. § 5321 ......................................................................................................14

31 U.S.C. 5314 ........................................................................................................24

31 U.S.C. 5321(b)(1) ................................................................................................13

31 USC 3711(a)(2) ...................................................................................................20

## Other Authorities

I.R.C. §6103 §7213 ...................................................................................................30

*I.R.M. 25.1.1.2* ........................................................................................................17

I.R.M. 4.26.16.3.4.2(1) & (2) (11-06-2015) ....................................................................12

I.R.M. 4.26.16.3.4.2(9) ..............................................................................................12

*I.R.M. 4.26.16.5.1 (11-06-2015)* ................................................................................18

*I.R.M. 4.26.16.5.2-3* ................................................................................................18

I.R.M. 4.26.26.6.5.1 (11-06-2015) ...............................................................................17

I.R.M. 8.11.6.2.(5)(7)(9) ............................................................................................30

*I.R.M.4.26.16.3.4.2(9)* .............................................................................................12

*IRS Chief Counsel Memorandum* 200603026 (Jan. 20, 2006) ...................................................17

Pub. L. No. 107-56, § 361, 115 Stat. 272 ...........................................................................24

Pub. L. No. 91-508, § 202, 84 Stat. 1114 (1970) .................................................................24

Pub. L. No. 99-570, Subtit. H, 100 Stat. 3207 (Oct. 27, 1986) .............................................24

Rules

Rule 56(c) of the Federal Rules of Civil Procedure ...............................................................10

Regulations

31 C.F.R. 5321 (B) ......................................................................................................14

31 C.F.R. 5321 (C) ......................................................................................................14

31 CFR § 1010.350 (e) .................................................................................................10

31 CFR § 1010.350 (f) ..................................................................................................11

31 CFR 901.1(a) ..........................................................................................................20

31 CFR 901.1(b) ..........................................................................................................20

### INTRODUCTION AND FACTUAL BACKGROUND OF THE MATTER:

This case arises out of the assessment of willful FBAR penalty upon Plaintiff for not including in his 2007 Foreign Bank Account Reporting form ("FBAR") information about a Swiss bank account ("the UBS account" or "the account") owned by his wife, a non-U.S. person, for which he held a power of attorney.

Plaintiff Jonathan Zuhovitzky is a dual U.S. and Israeli citizen who was born in Tel Aviv, Israel in 1945. Plaintiff's wife, Esther Zuhovitzky is a dual Austrian and Israeli citizen born in Tokyo, Japan in 1946. It is undisputed that Plaintiff's wife was never a citizen or resident of the United States and that she never elected to be treated as a "U.S. person for U.S. tax purposes. Declaration of Esther Zuhovitzky ("EZ Decl") Ex A.  It is undisputed that no funds or income in the account were U.S. sourced. Declaration of Melissa Perry ("Perry Decl") Ex C.

Documents of the account were released by UBS to the United States government pursuant to the John Doe Summons (among thousands of accounts). This triggered an IRS audit of Plaintiff and his wife. It should be noted that all of the documents included as exhibits with the declaration of Esther Zuhovitzky (as well as nearly 2,000 more) were provided to the IRS and available to Defendants throughout the entire process. A wrongful assessment of taxes and penalties imposed by Defendants as a result of the audit has been litigated and settled in the U.S. Tax Court. Defendant Fhirdosa Khatib ("Defendant Khatib"), the auditor, decided that the foreign account income was taxable and accordingly calculated it as underreported income and added to it civil fraud penalties.   None of these penalties, in the millions of dollars, were upheld by the U.S. Tax Court. Decl. Perry Ex L. This case, based on the same audit and by the same auditor, presents the related monetary and legal issues caused by a wrongful assessment of a willful FBAR penalty on Plaintiff.

Plaintiff notes that Defendants continue to display a lack of discernment, fair and honest treatment, or even a modicum of due diligence in this matter. Defendant's derisory footnote 4 does not survive a reality check. Astonishingly, it implies that the penalty has practically vanished, since the government did not pursue a court enforced collection [hence "the windfall" ]. This is chimerical. The penalty balloons steadily at its usurious pace. Since this case was filed it increased by more than $270,000.00 and reached $9,884,037 as of 2/2/21.

Defendants state that "Plaintiff cannot identify any disputed areas of material fact" Defendants' Memorandum of Law ("Def. MOL") p. 7. The very essence of this matter is that Plaintiff disputes that he "willfully" failed to include the account on his FBAR. The finding of "willfulness" in any matter is a question of fact. The IRS bears the burden of proof on "willfulness" in upholding a "willful" FBAR penalty.

Further, Plaintiff asserts that Defendants knowingly made false statements on government documents in support of their wrongful assertion of a "willful" penalty, in order to deny Plaintiff any meaningful due process, with the goal of assessing an exorbitant and constitutionally excessive fine. Decl Khatib, ¶ 13, Ex E;  Decl Sawyer ¶7, 8, 10-11; Ex. A, C, Decl Perry Ex K.

Within weeks of starting the audit, Defendant Khatib determined the outcome she wished to achieve and ignored the facts readily evidenced in the thousands of UBS documents in front of her. This set a smooth course to determine "guilty" on both the tax and FBAR matters.

Defendants present to this Court their original false statements as "undisputed facts". Defendants continue to rely heavily on their false claim that they were forced to assess the FBAR penalty "immediately" in June 2014 because Plaintiff failed to sign a waiver extending the statute of limitations. Defendants were and are aware that this claim is untrue. Due to extensions issued

by the Department of Treasury, the filing date for Plaintiff to file an FBAR including the account was June 30, 2011 (well after the audit began). There is a six-year statute of limitations on assessing FBAR penalties. Thus, the statute of limitation for assessing a penalty on Plaintiff's 2007 FBAR was June 30, 2017.  Plaintiff's Memorandum of Law p 9, Ex A and B.

Defendants' claimed that Plaintiff "held a financial interest" in the account, thereby denying that the extension of time for filing to Plaintiff.  Decl. Khatib, Ex E; Decl. Sawyer 7, 8, 10-11; Ex. A, C; Decl. Perry Ex D. They utilized this false claim to allow Defendant Khatib to "pre-assess" the FBAR penalty, causing the penalty to be final and based on one auditor's determination.  Despite written assurances by both the audit and the Appeals divisions, the Appeals process for pre-assessed penalties over $100,000 is a sham. Defendants were and are well aware that for any penalty greater than $100,000, the penalty becomes a "debt owed to the United States". 31 USC 3711(a)(2), 31 CFR 901.1(a) and 31 CFR 901.1(b). The Office of Appeals has no right to "compromise" the debt without the involvement of the Department of Justice. Because the Office of Appeals could not change the penalty after it was assessed, all the promises of fair consideration and due process with claims that the matter would be duly considered and perhaps sent back to audit- were lies told to placate the taxpayer. Decl.  Beasley, Ex. B; Decl. Sawyer Ex. A.

Defendant Khatib's claims that Plaintiff and his wife failed to cooperate during the audit are false. Plaintiff and his wife resided in Europe at the time of the audit. Plaintiff's CPA attempted to fulfill Defendant Khatib's requests although they were non-specific and ambiguous. When the CPA became concerned at the aggressiveness of Khatib's audit, Plaintiff hired tax counsel to assist. Defendant Khatib continued to refuse to reveal that the audit was about the UBS account.  When legal counsel asked for further information regarding the basis of the audit, Khatib cancelled an

appointment and determined she would no longer interact with Plaintiff's counsel.  Perry Decl.
Ex. A.

Plaintiff and his wife have cooperated with the IRS in all respects for nearly a decade on a
matter which should have been disposed of in short order in 2011. A proper audit would have
easily determined that the UBS account belonged to a non-U.S. person and its funds were not U.S.
sourced. Such audit would have automatically determined that such account is not taxable in the
United States.  A proper audit should have recognized that civil fraud "an intentional wrongdoing
on the part of a taxpayer, with the specific purpose of evading a tax known or believed to be
owing," was not applicable here - there could be no "civil fraud" where there was no tax owed.
Where the account was not taxable, Plaintiff had no motive to "willfully" not include the account
on his FBAR.

Plaintiff held a power of attorney to the account years before he was a "U.S. person". Decl
E.Z. Ex G. Plaintiff always knew that his wife was a non- U.S. person and she did not have to file
FBAR reports. Decl E.Z. A.  When Plaintiff moved to the United States, he was diligent about his
compliance with U.S. tax matters. Plaintiff was aware that he had a duty to file FBAR reports on
*his* foreign accounts and timely did so for every year required. Plaintiff and his wife reported her
U.S. income and paid their taxes in a timely fashion. Plaintiff was not aware that, although his wife
had no duty to report her account, he was supposed to report the account because he had become
a U.S. person.   Plaintiff was certain that he, as well as his wife, were meeting all of their
responsibilities to the IRS.

Since the filing of this suit, Defendants have engaged in less than honest settlement talks
and, in an apparent attempt to brow beat Plaintiff into dropping this suit, have reinstated

garnishments from his Social Security benefits after having removed him from the program nearly two years ago.

### Seven Important Facts to Keep in Mind

1) Plaintiff had *no financial interest* in the account.

2) Plaintiff did not *fail to file* an FBAR for 2007 (or any other year). Plaintiff did not include information about the account belonging to his wife on his FBAR.

**3)** Defendants did not have to assess the FBAR penalty in June 2014 because the **statute was not about to expire.**

4) *If* Plaintiff had a duty to report the account on his 2007 FBAR *the filing date* for that FBAR *was June 30, 2011*.

5) If Plaintiff had a duty to report the account on his 2007 FBAR, the statute of limitations to assess a penalty *was June 30, 2017.*

6) Not including the account on Plaintiff's FBAR *caused no harm* to the United States because the account was never taxable in the United States.

**7)** Neither Plaintiff nor his wife *gained any benefit* from not including the account. Reporting the account would not have increased their tax burden.

## I)    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The standard for summary judgment as set forth in Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322; *Anderson v. Liberty Lobby* 477 U.S. 242, 247-48.

### Ownership of the Account

It is undisputed that Plaintiff's wife was the sole owner of the account. See Dec Khatib, Ex A, B, C.  It is undisputed that Plaintiff held no financial interest in the account, holding only signatory authority. *See:*  Decl. E. Z. Decl. Exhibits G, K and O;  Khatib Decl. Ex B.

The IRS confirmed that the funds contained in the account were inherited by Esther Zuhovitzky from her father's estate (a non-U.S. Person) and that Plaintiff had not deposited any funds into the account. Perry Decl. Ex. C.

### Statutory Definitions of Financial Interest vs. Signatory or Other Authority

31 CFR § 1010.350 (e) defines Financial interest as:  A United States person has a financial interest in each bank, securities or other financial account in a foreign country for which he is the owner of record or has legal title whether the account is maintained for his own benefit or for the benefit of others. If an account is maintained in the name of more than one person, each United States person in whose name the account is maintained has a financial interest in that account.

31 CFR § 1010.350 (f) defines signature or other authority as: Signature or other authority means the authority of an individual (alone or in conjunction with another) to control the

disposition of money, funds or other assets held in a financial account by direct communication (whether in writing or otherwise) to the person with whom the financial account is maintained.

By statutory definition, Plaintiff held signature authority over the account but did not hold a financial interest in the account. Defendants concede this point citing to the same statute. Def MOL p. 9.

### Extensions of FBAR Filing Dates for Individuals Holding Signatory Authority
### IRS Notice 2009-62

In 2009 the Department of the Treasury and the IRS recognized that the requirements for individuals who held only signatory authority over the foreign account(s) of others regarding the filing of FBARs on those accounts were unclear and poorly understood. Via IRS Notice 2009-62 (August 7, 2009) the IRS provided "administrative relief for persons with no financial interest in a foreign financial account but with signature or other authority over the foreign financial account". IRS Notice 2009-62 A(i)   *See:* IRS Notice 2009-62 attached hereto as *Exhibit A*.

Through the process of Notice and Comment, the IRS declared that it intended to issue clarifying regulations regarding the FBAR filing requirements for these individuals and soliciting comments from professionals dealing with these regulations. The Department of Treasury specifically invited comments regarding when a person with signatory authority over, but no financial interest in, a foreign account should be relieved of filing an FBAR for the account.

Notice 2009-62 *extended the date for filing* an FBAR for any year prior to 2008, for these relevant individuals to *June 30, 2010*. (*emphasis added*).

In light of the additional time needed for the Department of Treasury to address issues pertaining to FBAR filing requirements and the need to provide administrative relief for (i) persons with signature authority over, but no financial interest in, a foreign account, … this Notice provides that those persons have until June 30, 2010, to file an FBAR for the 2008 and earlier calendar years with respect to these foreign financial accounts. The FBAR filing extensions provided by this Notice applies to FBARs with respect to 2008 and earlier calendar years. IRS Notice 2009-62 (B) attached hereto as *Exhibit A*. See *Also:* I.R.M. 4.26.16.3.4.2(1) & (2) (11-06-2015)  informing IRS employees of the extensions and I.R.M. 4.26.16.3.4.2(9) noting that Examiners should be aware of these extension provisions when determining the timeliness of FBAR filings.

### IRS Notice 2010-23

On March 15, 2010 the IRS issued Notice 2010-23 extending Notice 2009-62.  Notice 2010-23 reiterated that Notice 2009-62 was provided "in order for the Treasury Department to have the time necessary to develop comprehensive FBAR guidance".

By Notice 2010-23 the IRS and the Treasury Department extended the filing deadline for persons with signature authority over, but no financial interest in, a foreign financial account for which pursuant to Notice 2009-62, an FBAR would have been due on June 30, 2010, to June 30, 2011.  "The *deadline of June 30, 2011*, applies to FBARs reporting foreign financial accounts over which *the person has signature authority*, but no financial interest for the 2010 and prior calendar years." *(Emphasis added)*  IRS Notice 2010-23 attached hereto as *Exhibit B*.  See *Also: I.R.M. 4.26.16.3.4.2(1) & (2)* (11-06-2015) informing IRS employees of the extensions and *I.R.M.4.26.16.3.4.2(9)* noting that Examiners should be aware of these extension provisions when

determining the timeliness of FBAR filings. *See*: IRS Notice 2010-23 attached hereto as *Exhibit B.*

With regards to filing an FBAR for the year 2007 providing information regarding the account, Plaintiff is an individual covered by Notice 2009-62 and Notice 2010-23. The date by which Plaintiff was required to file an FBAR for 2007, including information about the account, was ***June 30, 2011*** (several months after Defendant Katib began her audit).

### Penalty Determination Date

The statute of limitations on assessment of the FBAR penalties is found at 31 U.S.C. 5321(b)(1). The Secretary of the Treasury may assess a civil penalty under subsection (a) at any time before the end of the six-year period beginning on the date of the transaction with respect to which the penalty is assessed. In the case of filing violations, the date of the transaction is the due date for filing the FBAR. I.R.M Part 4 Chapter 26 Section 17.3.1

### Revocation of Plaintiff's Signatory Authority

In August 2010, Plaintiff's wife, as sole owner of the account, instructed UBS in writing to revoke Plaintiff's power of attorney (POA). This was confirmed, in writing, by legal counsel for UBS in Zurich, Switzerland in September 2020. E.Z. Decl. *Ex. P.*

### On Filing Date for the 2007 FBAR, Plaintiff No Longer Had a Duty to Report the Account

At the time of the required filing date (June 30, 2011), Plaintiff no longer had signatory rights to the account and therefore had no duty to report it in an FBAR for 2007 (or any year prior

to and including 2010, per Notice 2010-23). The United States' assessment of a civil FBAR penalty should therefore be nullified as a matter of law.

## II)   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF "WILLFULNESS"

Plaintiff objects to Defendants' Motion for Partial Summary Judgment under the Little Tucker Act on the issue of "willfulness" on the basis that:  1)  the issue of "willfulness" must be reviewed *de novo* by the factfinder without reliance on the findings or opinions of IRS audit and/or appeals staff; 2) Defendants bear the burden of proof on the issue of "willfulness"; and 3) Defendants have provided no facts supporting the claim that Plaintiff's non-inclusion of the account, to which he had no financial interest, on his FBAR was "willful".

FBAR penalties can be assessed as either non-willful under 31 C.F.R. 5321 (B) for which the maximum fine is $10,000 or under 31 C.F.R. 5321 (C) "willful" for which the maximum penalties are either $100,000.00 or 50% of the amount in the account at the time of the violation. Def. MOL p 11. Where the government seeks a "willful" penalty, the government bears the burden of proving "willfulness". Despite Defendants claims otherwise, it is not up to the Plaintiff to prove he was not "willful". Def MOL p 13.

### Standard of Review of Willful FBAR Penalty

The Courts have ruled that when considering the validity of a "willful" FBAR penalty the correct t standard of review is *de novo*. *See*: *Bedrosian v. United States*, No. 15-5853, 2017 WL 1361535 (E.D. Pa. Apr. 13, 2017); *Bedrosian v. United States*, No. 15-5853, 2017 WL 3887520 (E.D. Pa. Sept. 5, 2017); *United States v. Williams*, No. 09-437, 2010 WL 3473311, at *1 (E.D. Va. Sept. 1, 2010), United *States v. Williams*, 489 F. App'x 655 (4th Cir. 2012); (*United States v.*

*McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012) (applying *de novo* standard to whether underlying penalty was valid).

The *Williams* court held that the appropriate level of review for an FBAR penalty is *de novo* because 31 U.S.C. § 5321 provides for no adjudicatory hearing before an FBAR penalty is assessed. The *Williams* court looked to the Tax Court where review is *de novo*, as well as to enforcement actions brought by the government in other contexts. *United States v. Williams*, No. 09-437, 2010 WL 3473311, at 1 (E.D. Va. Sept. 1, 2010), *citing* to; *U.S. S.E.C. v. Pirate Investor LLC*, 580 F.3d 233,239 (4th Cir. 2009); *Hi-Tech Pharm., Inc. v. Crawford*, 544 F.3d 1187, 1191 (11th Cir. 2008); *Reich v. Local 89* , 36 F.3d 1470, 1474 (9th Cir. 1994) The Government is required to prove its case on the record established at trial and the Court's decision is to be based on the merits of the case and not on any record developed at the administrative level. *Williams citing; Eren v. Commissioner*, 180 F.3d 594, 597-98 (4th Cir. 1999). It is up to the Court to determine whether the government has proven "willfulness". "The rule is that the Court' decision be based on the merits of the case and not on any record developed at the administrative level." *United States v. McBride*, 908 F.Supp.2d 1186, *citing Eren v Commissioner*, 180 F.d 594 (4th Cir. 1999). *See also*: *Bedrosian v. United States*, Civil Action No. 15-5853, 2017 WL 1361535 (E.D. Pa. April 20175); *Bedrosian v. United States*, Civil Action No. 15-5853, 2017 WL 3887520 (E.D. Pa. Sep. 2017); *Rupert v. United States*, 225 F.R.D. 154, 157 (M.D. Pa. 2004) (the court "must independently evaluate the plaintiffs' claim, rendering the recommendations of the IRS . . . not relevant to the review"). "The court alone is the appropriate setting to put forth any relevant admissible evidence on the issue of willfulness and that the IRS's analysis of the case, its preliminary conclusions regarding FBAR violations and the viewpoints of IRS personnel do not

speak to Plaintiff's willfulness or lack thereof." *Bedrosian v. United States*, Civil Action No. 15-5853 (E.D. Pa. Sep. 5 2017).

## Burden of Proof

Defendants statement that **"Because Plaintiff has failed to demonstrate that … his failure was not willful … the Court should find that the penalty was properly imposed"** is a gross misstatement of the law**.** *Def. MOL p. 13***.**  Plaintiff has ***no need*** to demonstrate (prove) he was "not willful".  In the context of a "willful" FBAR penalty, the Government bears the burden of proof for "each element of its claim for a civil FBAR penalty by a preponderance of the evidence, including the key question of whether an individual's failure to report was "willful". *United States v McBride*, 908 F. Supp.2d 1186 (D. Utah 2012).  Further, unlike cases in which the IRS has assessed a tax or penalty under Title 26, the IRS enjoys no presumption of correctness for FBAR penalties assessed under Title 31.

The determination of willfulness turns not only on objective facts but also "on consideration of the defendant's state of mind, knowledge, intent and belief regarding the propriety of their actions." *Bedrosian v. United States*, Civil Action No. 15-5853 (E.D. Pa. Sept. 2017)*; citing; E.E.O.C. v. Westinghouse Elec. Corp.*, 725 F.2d 211, 218 (3d Cir. 1983). "It is not enough to simply read the black letter definition of the term …in a vacuum; rather, disposition of this case requires a fact- and context-specific inquiry into the individual's actions. *Id*. A clear and concise analysis of the facts in this matter shows that there was no reason that Plaintiff would have intentionally failed to include the account on his FBAR including it would have caused no harm to him.

## What Constitutes "Willful" Under 31 U.S.C. §5321

The Supreme Court has stated that "willful" is a word of many meanings whose construction is often dependent on the context in which it appears" *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed. 2d 1045(2007).  Perhaps surprisingly, given the immensity of the penalties allowed under it, there is no definition or clear standard for "willful" contained within 31 C.F.R. §5321. The lack of a clear definition has allowed government attorneys (as defendants attempt to do here) prosecuting "willful" FBAR penalties in the last few years to unfairly lower the standard more and more into something resembling "he had a duty to file an FBAR, he filed a tax return and signed it under "penalty of perjury", he did not include the account on the FBAR….he is therefore "willful". Decl. Perry, Ex. K.

### The IRS Definition of "Willful"

The IRS defined both willful and non-willful violations for its examiners as follows: **Willful**: "Willful is the voluntary, intentional violation or disregard of a known legal duty. Notice that the two important concepts in the definition of willfulness are knowledge and intent." **Non-Willful**: "Non-willfulness is an involuntary, unintentional violation or disregard of a known legal duty. In other words, the person lacked an intent to violate the law, but nonetheless did violate the law."  See I.R.M. 4.26.26.6.5.1 (11-06-2015).

For years the IRS has stated that the standard is the same as that used for both criminal "willful" FBAR penalties and to define "fraud" within tax cases. The IRS definition of fraud within tax cases is commonly acknowledged to be defined as "an intentional wrongdoing, on the part of a taxpayer, with the specific purpose of evading a tax known or believed to be owing." Tax fraud requires both a tax due owing and fraudulent intent. *I.R.M. 25.1.1.2*

Defendants conceded that "willfulness" has the same definition (but differing levels of proof) for both criminal and civil FBAR penalties". Def. MOL p 12 *citing United States v. Garrity*, 304 F. Supp. 3d 267,271 n.1. (D. Conn. 2018) *citing IRS Chief Counsel Memorandum* 200603026 (Jan. 20, 2006). The Chief Counsel Memorandum stated that the definition of "willful" applicable to the §5321(a)(5) FBAR penalty was "a voluntary intentional violation of a known legal duty". *IRS Chief Counsel Memorandum* 200603026 (Jan. 20, 2006).

This is consistent with statutory interpretation which commonly holds that a term used in more than one section of a statute should be treated as having the same meaning. "A term appearing in several places in a statutory text is generally read the same way each time it appears," *Ratzlaf v. United States*, 510 U.S. 135, 141-42, 114 S. Ct. 655, 126L.Ed. 2d 615 (1994). In the criminal tax context, where the meaning of "willful" has been defined, the government must show that the individuals actions amounted to a *voluntary, intentional violation of a known legal duty*. *Cheek v. United States*, 498 U.S. 192, 201 (1991) (i.e., the same standard the IRS must meet to prove "fraud" in a civil tax case); *see also*: *Brounstein v. United States*, 979 F.2d 952, 955-56 (3d Cir. 1992) (willful failure to pay taxes, holding that "willfulness is 'a voluntary, conscious and intentional decision). In order for an individual to act "willfully" in a situation "involving a requirement to report or disclose certain information to the IRS," he must engage in "conduct which is voluntary, rather than accidental or unconscious." *McBride*, 908 F. Supp. 2d at 1205.

While internal IRS advices, manuals, and training material do not set precedential law, they are indicative of the agency's understanding, standards and directives to its employees. Further, administrative agencies ARE constrained to operate within their own directives, regulations, and procedures. IRS guidance and training manuals consistently instruct employees that the test for willfulness is whether there was a voluntary, intentional violation of a known legal duty. *I.R.M.*

*4.26.16.5.1 (11-06-2015).* The burden for establishing willfulness is on the IRS and must be supported by evidence of willfulness. *I.R.M. 4.26.16.5.2-3.*

### The *"Safeco"* Definition of "Willful"

Government prosecutors in some recent cases have contended that "willfulness" as used in §5321 should include "recklessness", defined as "conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known," *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007). Under this standard the government contends that an individual has willfully violated Section 5314 when he either *knowingly or recklessly* fails to file an FBAR. *See*, e.g., *Williams*, 489 F. App'x at 658; *Bohanec*, 2016 WL 7167860, at 5; *McBride*, 908 F. Supp. 2d at 1204.

In the context of civil liability, the courts have generally understood "reckless" as conduct entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007). Civil recklessness requires proof of something more than mere negligence: "It is [the] high risk of harm, *objectively assessed*, that is the essence of recklessness at common law." *Safeco*, 551 U.S. at 69.

Even under the *Safeco* reckless standard, Plaintiff's behavior does not reach "willful". Plaintiff's behavior did not entail an "unjustifiably high risk of harm that was either known or should have been known". Plaintiff knew his wife was a non- U.S. person, who was not required to pay income tax on her non-U.S. income and was not required to file FBAR reports on her foreign accounts. Decl. E.Z. Ex. A. Plaintiff had inquired of his tax preparer whether his wife needed to file FBARs and was told "no, non-U.S. people do not need to file FBARs". Plaintiff knew that the funds in the account had originated from an inheritance to his wife from her father (also a non-

U.S. person) and that the account involved no U.S. sourced funds. Decl. Perry, Ex C.  Plaintiff knew the IRS had no interest in his wife's foreign sourced income as they had authority to tax only U.S. sourced income. Plaintiff had no reason to even question that the IRS would require *him* to provide information on the account. Since there could be no taxes owing from the account, there was no potential for harm (the harm envisioned is the non-reporting of taxable income – not the harm caused by the IRS assessing outrageous penalties).  Not including the account caused no harm to the United States. Nor would providing such information be of any use to the IRS. Conversely there was no benefit to Plaintiff in not including information about the account, and there would have been no disadvantage to Plaintiff or his wife if he had.

### III)    PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DUE PROCESS

"No person shall …. be deprived of life, liberty, or property, without due process of law." Fifth Amendment, United States Constitution.

The FBAR penalty statute allows the government to assess and collect penalties without providing an opportunity for a timely and meaningful hearing. *Williams*, *supra* 2010 WL 3473311. When there remains only a short time frame left to assess an FBAR penalty, IRS procedures allow for the "pre-assessment" of the penalty. When a penalty of greater than $100,000 is "pre-assessed" by audit it is fixed and final because the Appeals office has no right to compromise the debt without the intervention of the Department of Justice. 31 USC 3711(a)(2), 31 CFR 901.1(a) and 31 CFR 901.1(b). Despite promises contained in letters sent by both audit and appeals, Decl. Khatib, Ex. E; Decl. Sawyer Ex A, the promise of a fair, independent and meaningful review was illusory.

Here again, Defendants relied on the untruth that the penalty had to be pre-assessed in 2014 because the 6-year statute was quickly approaching.

Although the government *may* commence a civil suit to reduce the penalty to a judgment, Decl. Beasely #9, if it does not, it is allowed to commence taking 15% of the individual's social security benefits with no statutory time limit. Where the government does not bring suit, the only avenue available to the individual is to pay the penalty and file a refund suit.  Decl. Sawyer #10, Ex. C.  Where the person being fined is a signatory rather than owner of the account, the individual does not "own" the funds to pay the penalty in order to seek a refund thereby working a violation of the individual's constitutional right to due process.

The Constitutional right to be heard is a basic aspect of duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. *Fuentes v. Shevin*, 407 U.S. 67 (1972).

The central meaning of procedural due process the fundamental right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552. (1965). This prohibition against the deprivation of property without due process of law reflects the high value placed on a person's right to enjoy what he has, free from governmental interference. *Fuentes v. Shevin*, 407 U.S. at 81. *See*: *Lynch v. Household Finance Corp.,* 405 U.S. 538, 552.

In order for the right to notice and a hearing to serve its full purpose it must be granted at a time when the deprivation can still be prevented. Even where a later hearing may return an individual's possessions and may even allow damages it cannot undo the fact that an arbitrary taking subject to the right of procedural due process has already occurred. *Fuentes v. Shevin*, 407

U.S. at 82. The Supreme Court has insisted that opportunity for that hearing must be provided before the deprivation at issue takes effect. *See: Bell v. Burson*, 402 U.S. 535, 542; Wisconsin *v. Constantineau*, 400 U.S. 433, 437.; *Goldberg v. Kelly*, 397 U.S. 254; *Armstrong v. Manzo*, 380 U.S. 545, at 551; *Mullane v. Central Hanover Tr. Co*., 339 U.S. 306 at 313; *Opp Cotton Mills v. Administrator*,312 U.S. 126, 152-53; *United States v. Illnois Central R. Co*., 291 U.S. 457, 463; *Londoner v. City & County of Denver*, 210 U.S. 373, 385-86.

This history reflects the traditional and common-sense notion that the Due Process Clause, was "intended to secure the individual from the arbitrary exercise of the powers of government". *Hurtadov. California,* 110 U.S. 516, 527 (1884); *Dent v. West Virginia,* 129 U.S.114, 123. (1889)"); *Parratt v. Taylor, 451* U.S. 527, 549 (1981).

Defendants' claim that Plaintiff has already received Due Process is false. The review envisioned by the Due Process Clause is an impartial and disinterested tribunal at a time and in a manner that is meaningful. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations, and the promotion of participation and dialogue by affected individuals in the decision-making process. *Carey v. Piphus*, 435 U.S. 247, 259–62 (1978).  The Supreme Court has repeatedly emphasized that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process". *Id*. at 259 quoting *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) and are designed to minimize substantively unfair or mistaken deprivations of life, liberty, or property by enabling persons to contest the basis upon which the government proposes to deprive them of protected interests. *Fuentes v. Shevin*, supra, 407 U.S. at 81. Both the appearance and reality of fairness must be preserved, "generating the feeling, … that justice has been done," *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 172 (1951) (Frankfurter, J., concurring).

Defendants' statements that Plaintiff received due process, either by opposing Khatib's assessment or through the telephonic hearing with appeals is incorrect and misstates the law. Def MOL p 14. In fact, courts have held that the *de novo* standard of review is appropriate in FBAR cases precisely because there is no adjudicatory hearing provided prior to the assessment of an FBAR penalty. *Williams supra*, 2010 WL 3473311.

Defendants statements that "Plaintiff cannot establish any defect in this procedure that deprived him of due process" is clearly incorrect. Plaintiff asserts that the "appeals process" as offered by the IRS in cases of pre-assessed FBAR penalties over the amount of $100,000 is a sham. The Appeals office lacks any power to remove, change or modify the penalty. Any hearing held with an appeals officer therefor fails to meet the "meaningful" standard of the Due Process. Defendants intentional acts ensured that Plaintiff's Due Process would be violated.

Defendants used their actions of claiming that Plaintiff had a financial interest in the account to deny that the extensions to the filing date, and thereafter to the statute of limitations, applied to him. Defendants have repeatedly justified their premature assessment of the FBAR penalty with false claims that the penalty had to be assessed because the statute would run out in June 2014. This was untrue, the statute ran out in June 2017. Once defendants allowed the penalty to be "pre-assessed" the IRS Office of Appeals had no right to compromise the penalty. At that point, any hearing at the Appeals level did not fulfill the requirements of Due Process because it was neither timely nor meaningful.

**IV) PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON THE ISSUE OF THE EIGHTH AMENDMENT "EXCESSIVE FINES" CLAUSE**

Defendants' statement that the penalty assessed against Plaintiff is not subject to review under the Eighth Amendment's "Excessive Fines" clause because it is not imposed for a criminal offense (or at the end of a criminal proceeding) does not accurately report the law on this issue. Defs. MOL p 17. The Supreme Court has held that "A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d. In fact, Defendants' rely on "the appropriate punishment for an offense belongs …to the Legislature" indicating Defendants concurrence that the FBAR penalty is a "punishment". Def. MOL p 20, *citing*; *United States v Bajakajian* 524 U.S. 321, 336 (1998). Defendants states that the "*Bajakajian* factors" would be the appropriate standard to determine whether the penalty assessed against Plaintiff is excessive. Def MOL p21. The best Defendants can assert it that "The purpose of the civil FBAR penalty is at least partially remedial… it has the purpose of compensating the Government for a loss". Def MOL p 18

It is difficult to defend the position that the FBAR penalty is designed to be remedial and compensate the Government for a loss. The Government has ample protections and procedures to search out and assess taxes relating to hiding taxable money in foreign accounts under the tax code and uses it extensively. Capture of such taxes is sought in separate tax actions with additional civil fraud penalties of 75% attached.

FBAR requirements are part of the Bank Secrecy Act ("BSA") enacted by Congress in 1970 to combat money laundering and other financial crimes in the United States. Pub. L. No. 91-508, § 202, 84 Stat. 1114 (1970). One of the primary purposes of the BSA was to deter the use of foreign financial accounts to avoid tax obligations. *See; Id.* Congress passed the Money

Laundering Control Act (MLCA) of 1986 through which it increased both the civil and criminal penalties associated with money laundering and related violations of the BSA. Pub. L. No. 99-570, Subtit. H, 100 Stat. 3207 (Oct. 27, 1986).  The MLCA added a civil monetary penalty against private individuals for the willful failure to file an FBAR. *United States v. Kahn* (E.D. NY 2019) Slip Copy2019 WL 8587295. Following the September 11, 2001, terrorist attacks, Congress swiftly passed the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act"), Pub. L. No. 107-56, § 361, 115 Stat. 272, which strengthened anti-money laundering controls and directed the Secretary of the Treasury to improve compliance with the [FBAR] reporting requirements established in 31 U.S.C. 5314.  *See; Kahn supra* for a more complete review of the legislative history of the FBAR. There can be little doubt that FBAR penalties were intended to be penalties specifically to enhance enforcement and compliance with the BSA.

"The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." *United States v. Halper,* 490 U.S. 435, 447– 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). "It is commonly understood that civil proceedings may advance punitive as well as remedial goals" *Id.,* at 447, 109 S.Ct., at 1901; *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 554 (1943) (Frankfurter, J., concurring).

The determinative factor in ascertain whether a penalty, fine, or forfeiture is subject to consideration under the Eighth Amendment's "excessive fines" clause is whether or not it is "punishment". A fine or penalty may serve a remedial purpose and still be subject to the excessive fines clause as long as it can be explained in part as having the motive to punish. Because civil sanctions frequently serve more than one purpose, the fact that a forfeiture serves remedial goals

will not exclude it from the Clause's purview, so long as it can only be explained as serving in part to punish. *United States v. Halper,* 490 U.S. 435, 448.

A sanction is classified as punitive when the size of the sanction cannot fairly be attributed to remedial purposes, "but rather can only be explained as *also* serving either retributive or deterrent purposes." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902. In *Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 275 n.21 (1989), decided shortly after *Halper,* the Court stated that *Halper* "implies that punitive damages awarded to the Government in a civil action may raise Eighth Amendment concerns. As related to Excessive Fines, the Supreme Court has observed that there is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence because fines are a source of revenue." As we have recognized in the context of other constitutional provisions, it makes sense to scrutinize governmental action more closely when the state stands to benefit. *Harmelin v. Michigan,* 111 S.Ct. at 2693 n. 9 (Scalia,J). *See also*: *United States Trust Co. of N. Y.* v. *New Jersey,* 431 U.S. 1, 25-26 (1977)

The Second Circuit has agreed with *Halper* that Eighth Amendment protections attach when an individual is subjected to a civil sanction classified as punitive. *U.S. v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, New York***,** 954 F.2d 29, 35 (2nd Cir. 1992). Further, each penalty must be assessed based on the individual case and that individual's behavior. The penalty "must not be incommensurate with the portion of the overall enforcement problem represented by the offense at hand. A disproportionately large forfeiture cannot be reasonably justified as a civil fine as opposed to punishment by placing full responsibility … on the shoulders of every individual claimant. This is particularly true where the

individual claimant's violations are relatively minor. *U.S. v. Certain Real Property and Premises*, 954 F.2d 29, 37 (2nd Cir. 1992).

## The Basis for Plaintiff's Eighth Amendment Claims for Excessive Fine

This case appears to be the first clear look at the FBAR penalty statute in relation to an individual with only signatory authority but no financial interest in an account. In the case of an individual holding only signatory authority of another's account, the statute seeks to impose a fine on funds which do not belong to the individual being fined with no consideration of the state of the individual's finances. It is important to note that in no instance would the individual holding only signatory authority owe taxes on the account. Therefore, not reporting the account provides no benefit to the signatory. Where the signatory holds authority over an account belonging to a non-U.S. person the owner of the account has no duty to file FBARs. Where the funds and income in the account are non-U.S. sourced the owner of the account owes no taxes and the United States has no taxing authority over the account. Therefore, not reporting the account provides no benefit to the owner. Where the preceding are the facts, the non-reporting of the account by the U.S. signatory causes no harm to the United States because there were no taxes due the U.S. from the account.

Where the government asserts a "willful penalty" of millions of dollars for an action (or failure to act) that caused no harm, it seems clear the government is imposing an excessive fine. Where the government then almost doubles the penalty with penalties on the penalty, how can there be doubt that this exacts an "excessive fine"?

We elucidate, using the particular facts in this matter:

1) The owner of the account was a non-U.S. person with no duty to file FBAR reports;

2) The funds in the account were sourced from a foreign inheritance;

3) The owner of the account had no duty to report the income for tax purposes to the United States;

4) Plaintiff had no financial or property interest in the funds in the account;

5) Plaintiff gained no benefit by not including the account on his FBAR report;

6) The United States suffered no harm from the failure to include the account on an FBAR because no taxes were due on the funds in the account;

7) Since the Government did not bring suit to enforce the penalty, Plaintiff was denied access to judicial review of the matter, because he was unable to pay the penalty and then sue for a refund;

8) After the imposition of a penalty of $5.3 million dollars, the government heaped insult upon impossible injury by assessing additional penalties and fees in the following amounts See Decl N. Beasley.

   a. Assessed Late-Payment Penalty        $1,460,970.60

   b. Late-Payment Penalty Pending          $388,232.73

   c. Potential Collection Fee              $2,330,039.57
                                            $4,179,242.90

9) Since this case was filed in June 2020, the penalty has increased by more than $270,000.00 and reached $9,884,037 as of 2/2/21.

10) There is no statutory limitation on the time frame for the government to continue garnishing Plaintiff's social security. Meaning the debt will continue to increase at an astronomical rate until Plaintiff dies.

11) Not only is the penalty grossly disproportionate to the offense there was *no harm* to the United States. *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014) *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

If a fine of ten million dollars, growing at a rate greater than $350,00 per year for unwittingly failing to report someone else's bank account, the failure of which provided no gain to the Plaintiff and caused no harm to the government, does not constitute an ***excessive fine,*** it is difficult to imagine what does.


## V)   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON THE ISSUE OF THE *BIVENS* CLAIMS

In 1971the Supreme Court in *Bivens*, recognized an implied damages action to compensate persons injured by federal officers who violated the Constitutional rights.  In the following decade, the Court allowed *Bivens*-type remedies twice more, in a Fifth Amendment gender-discrimination case, *Davis v. Passman,* 442 U.S. 228, and in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green,* 446 U.S. 14.  Plaintiff concedes that in subsequent years the Court has limited the applicability of Bivens claims with a two-part test. When faced with a Bivens claim the Court must determine 1) whether the case presents a new Bivens context, and if so, 2) if special factors counsel hesitation in the absence of affirmative action by Congress. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 *citing*; *Chappell* v. Wallace 462 U.S. 296 (1983).

The Supreme Court has not defined the phrase "special factors counseling hesitation". *Abbasi*, 137 S. Ct. 1843, 1857, however "special factors consideration includes existing legislation that covers the area of law and whether alternative processes exist for protecting the right". Callahan v. Federal Bureau of Prisons, 965 F.3d 520; *Abbasi*, 137 S. Ct. at 1858, 1862.   When alternative methods of relief are available, a Bivens remedy may not be." *Id.* at 1863.

Examples of cases where the Court has found that there are alternative pathways to redress Constitutional harms, and therefore no *Bivens* remedy, include the federal prisons' grievance process which contains its own statutes of limitations, filing procedures, and appeals process, *see*; *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 524 (2020) and cases brought by members of the military against superior officers. *Chappell v Wallace* 462 U.S. 296, 304, 103 S. Ct. 2362, 2368 (1983) (holding that the unique disciplinary structure of military establishment and Congress' activity in field constitute "special factors").   *Chappell v Wallace* 462 U.S. 296, 304, 103 S. Ct. 2362, 2368.

Defendants infer that the IRS letter explaining the process through which he could oppose the assessment of the FBAR provided adequate relief to constitutional violations.  Def MOL p 25. As noted in sections above, the appeals process provided by IRS protocol is a sham. Defendants next cite to the Internal Revenue Manual ("IRM") 8.11.6.2 to claim that Plaintiff had alternative means to seek relief. *Id.* That section of the I.R.M. actually supports the concept that the IRS does not provide alternative means to addressing harms caused by IRS employees in the process of an FBAR evaluation. The Section states: 1) "Post-assessed FBAR cases in excess of $100,000 (excluding interest, penalties and administrative costs) cannot be compromised by Appeals without approval of the Department of Justice (DOJ). Once assessed, the penalty becomes a claim of the U.S. government; 2) once FBAR penalties have been assessed, Alternative Dispute Resolution

(ADR) is not available; 3) Post Appeals Mediation (PAM) is not available in any FBAR penalty case. I.R.M. 8.11.6.2.(5)(7)(9).

Defendants rely on several cases which found *Bivens* remedies not available for tax matters because of the "comprehensive remedial scheme in place for plaintiffs' constitutionally recognized interests in the tax assessment context". Def. MOL p25.  The tax code is indeed extensive and contains ample remedies for taxpayers harmed by the illegal actions of employees of the IRS, with punishments for bad behavior including felony convictions and mandatory dismissal from employment. *See* I.R.C. §6103 §7213. Plaintiff utilized that "comprehensive remedial scheme" to address the related wrongful tax and penalty assessments by Defendant Khatib of millions of dollars. *However*, FBAR statutes fall under 31 U.S.C. and not 26 U.S.C (the "tax code") and therefore the tax code and related administrative and judicial remedies are not relevant or available to address violations of IRS employees for FBAR matters.

Alternatively, the individual Defendants (Khatib and Sawyer) claim entitlement to qualified immunity.  Defendants correctly quote the standard: "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing that the official violated a statutory or constitutional right, and that the right was "clearly established" at the time of the challenged conduct." Def MOL p26. Contrary to Defendants claim, Plaintiff does not plead "the violation of a right to not be subject to an FBAR penalty".  Plaintiff pleads a right not to have his Constitutional Rights of Due Process and no Excessive Fines be violated intentionally by federal actors. As has been duly shown above, Plaintiff has established that Defendants false claims that he owned the account rather than merely being a signatory, were knowing and intentional and set in motion the chain of events that led to the violation of his Constitutional Rights, as Defendants intended.

Defendant Khatib knew from the thousands of UBS documents in her possession that Plaintiff was not the account owner. Yet her work papers and penalty assessment letter state "he had a financial interest in the account". Decl. Perry Ex D., Decl. Khatib Ex. E.  Defendant Khatib's closing FBAR Summary of Facts form states "Mr. Zuhovitzky is U.S. person, has a financial account, the financial account is in a foreign country. Mr. Zuhovitzky has a financial interest and signatory authority over the account." Decl. Perry Ex D.  Defendant Khatib falsely reported "in 2006, 2007, and 2008 taxpayer checked "no" in response to the question on Schedule B of Form 1040 which asks whether taxpayer had interest in or signature authority over a foreign account." Decl. Perry Ex D. The box on Plaintiff's 1040 for 2008 is checked "no". Plaintiff's tax returns for 2006 and 2007 clearly have the box checked "yes".  Plaintiff's tax returns and FBARS for all three years were timely filed. Decl. Perry Exs E-J.   Plaintiff's tax preparer explained to Khatib that his office had made a mistake and inadvertently sent the 2008 tax return with that box checked "no". Most importantly,  as can clearly be seen, the FBAR for 2008 was duly filed in a timely manner. Decl Perry Ex J.

The falsities contained in Khatib's documents are not harmless. Defendants' untruths about Plaintiffs status enabled her to claim the need to "pre-assess" the penalty by falsely claiming a short-statute time. If she had (as she knew was correct) listed him only as a signatory, she would have had to adhere to the correct statute which ran out only in June 2017. Based on the correct statute she did not have to close the matter as "pre-assessed" and the IRS Appeals office would have been able to consider and re-determine the penalty. But since Defendant Khatib deliberately skipped the correct statute and rushed to "pre-assess", the IRS Appeals process was practically blocked and became a sham, thus violating Plaintiff's right to Due Process.

Defendant Sawyer, equally aware Plaintiff was not the owner of the account, nevertheless justified her decision to uphold the "willful" penalty by perpetuating the lies created by Defendant Khatib.  Sawyer's letter of July 16, 2015 stated that "You were required to disclose *your account* at a foreign bank and file an FBAR for 2007." "You had knowledge of the FBAR filing requirements yet failed to file a FBAR for *all of your foreign account*s." "*You directed* the foreign bank to destroy any mail presented to you that was not taken with you." "The penalty was computed by Exam based on 50% of the account balance on June 30, 2008 which is the *required filing date* for the 2007 tax year". Decl. Perry Ex K (emphasis added).

It is clear that the combined efforts of Defendants Khatib and Sawyer, whether working in concert or independently, caused the violation of Plaintiff's Fifth and Eighth Amendment Rights. Plaintiff asserts that because the FBAR regime does not fall under Title 26 of the United States Code, there are no "special conditions" which would provide him an avenue of relief from these Constitutional harms and therefore the *Bivens* claims in this action should be allowed to stand.

**WHEREFORE** the Plaintiff requests the Court deny Defendants Motion to Dismiss on the issue of the individual Defendants' culpability under *Bivens*.

Respectfully Submitted,

**Cohen, LaBarbera & Landrigan, LLP**

By: Melissa Perry, Esq.
99 Brookside Ave.
Chester New York 10918
T: (845) 291-1900
Counsel for Plaintiff

## CERTIFICATION OF COMPLIANCE

I hereby certify pursuant to Section II.D of the Court's individual Rules of Practice that this brief

excluding the caption, table of contents, table of authorities, signature, and this certification,

contains **8,888** words.

Cohen, LaBarbera & Landrigan, LLP

By: Melissa Perry, Esq.
99 Brookside Ave.
Chester New York 10918
T: (845) 291-1900
Counsel for Plaintiff